**[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 615.]**

GOODYEAR TIRE & RUBBER COMPANY, APPELLANT, *v.* TRACY, TAX COMMR., APPELLEE.

[Cite as *Goodyear Tire & Rubber Co. v. Tracy*, 1999-Ohio-325.]

*Taxation—Calculating franchise tax base—Net worth method of calculating the base upon which corporate franchise tax is to be assessed under former R.C. 5733.05(A) for tax year 1987—Retirement plan surplus includible in the numerator of the property fraction for franchise tax purposes.*

(No. 98-1010—Submitted March 10, 1999—Decided June 16, 1999.)

APPEAL from the Board of Tax Appeals, No. 96-M-1149.

———————————

{¶ 1} Pursuant to R.C. 5733.01(A), a tax is levied upon domestic and foreign corporations for the privilege of exercising their corporate franchises in Ohio. R.C. 5733.05[1] establishes the formulas used to determine the value of a corporation (the value of its issued and outstanding stock) for franchise tax purposes and the base upon which the corporate franchise tax is to be assessed. At issue in this case is the net worth method of calculating that base, as established by former R.C. 5733.05(A), for the tax year 1987.

{¶ 2} Pursuant to the net worth method of R.C. 5733.05(A), a preliminary step in calculating the franchise tax base is to divide the value of the corporation's issued and outstanding shares of stock into two equal parts. One part is then multiplied by a business done factor (not at issue in this case). The other part is multiplied by a property factor, which is expressed in terms of a fraction in which the net book value

———————————

1. R.C. 5733.05 was significantly amended by Am.Sub.H.B. No. 215, effective September 29, 1997, for tax years 1998 and thereafter.

of the corporation's property (including intangible property) sitused in Ohio is the numerator. The denominator is the net book value of all the corporation's property (including intangible property).[2]

**{¶ 3}** Taxpayer-appellant, the Goodyear Tire & Rubber Company, is a multinational corporation headquartered in Ohio. Following an audit, the Tax Commissioner assessed Goodyear a corporate franchise tax deficiency for the tax year 1987. The assessment, including interest, totaled $1.1 million and was based, in part, on the commissioner's conclusion that Goodyear had understated its franchise tax base by applying an understated property factor to one-half of its issued and outstanding shares of stock.

**{¶ 4}** Prior to 1986, Goodyear had established and funded a trust in connection with a defined benefit pension plan benefiting certain Goodyear employees. The pension plan agreement stated that Goodyear had no right to the trust property until all liabilities were paid. However, in the event all liabilities were satisfied, residual assets were to be returned to Goodyear. The trust agreement also provided that residual assets were to be returned to Goodyear.

**{¶ 5}** In 1986, Goodyear determined that the pension trust was overfunded in that the value of the assets in the pension trust exceeded the liability to pay retirement benefits. To reduce the surplus, Goodyear used a portion of the pension trust assets to purchase annuities to fund approximately ninety percent of the total of the retirement plan liabilities. It thereby reduced, but did not eliminate, the pension trust surplus.

**{¶ 6}** In accounting for these transactions in the company's financial books, Goodyear recorded a pro-rata amount of the remaining surplus as a gain in intangible

---

2. Former R.C. 5733.05(A) provides: **"**Take one part [of the value of the issued and outstanding shares of stock] and multiply it by a fraction whose numerator is the net book value of all the corporation's property owned or used by it in this state, and whose denominator is the net book value of all of its property ＊ ＊ ＊.**"**

assets on the company's balance sheet, in accord with Financial Accounting Standards Board ("FASB") Statement No. 88. Goodyear accounted for this intangible asset under the heading "other assets." The reporting of the gain in its financial books was not a taxable event for federal income tax purposes, because no funds were actually received in 1986. However, because the actual receipt of the gain in the future would constitute income to the corporation, resulting in an anticipated corresponding increase in income tax liability, Goodyear also entered a related deferred tax liability reserve in its financial books in 1986.

{¶ 7} In 1988, Goodyear purchased additional annuities to benefit the remaining pension plan participants, thereby providing for payment of all remaining retirement plan liabilities. The remainder of the pension surplus funds were actually received by Goodyear in 1988, after the additional annuities had been purchased to settle the remaining retirement plan liabilities.

{¶ 8} Thus, although Goodyear booked a gain for 1986, those funds were not available to it until termination of the pension plan in 1988, when Goodyear actually received the funds.

{¶ 9} The transactions Goodyear made in 1986 were reflected on Goodyear's franchise tax return for tax year 1987. Consistent with its own balance sheet, Goodyear included the value of the pension surplus in reporting the total of "other assets" it owned. It did not, however, report the value of the pension surplus as an asset that it owned in Ohio. Accordingly, in determining the property allocation ratio, Goodyear failed to include the value of the remaining surplus in the numerator of the property fraction.

{¶ 10} In auditing Goodyear's 1987 tax return, the commissioner deemed the correct situs of the pension surplus to be Ohio and added its value to the value of Goodyear's property in Ohio. The commissioner accordingly increased the property factor (ratio of property owned or used in Ohio to net book value of total property wherever situated) that is used to apportion the value of Goodyear's stock for purposes

of calculating one-half the tax base for assessment of the franchise tax pursuant to the net worth basis. Ultimately, these recalculations resulted in a portion of the deficiency assessment against Goodyear.

**{¶ 11}** Goodyear appealed to the Board of Tax Appeals ("BTA") from the commissioner's final determination. The BTA affirmed, holding that the pension surplus should be included in the value of Goodyear's Ohio property and included in the numerator of the property fraction.

**{¶ 12}** The cause is before this court upon an appeal as of right.

_____

*Thompson, Hine & Flory, L.L.P., Stephen L. Buescher* and *James C. Koenig,* for appellant.

*Betty D. Montgomery*, Attorney General, and *Robert C. Maier*, Assistant Attorney General, for appellee.

_____

**MOYER, C.J.**

**{¶ 13}** Goodyear posits as its sole proposition of law that "[a]n intangible asset representing a retirement plan surplus is not includible in the numerator of the property fraction set forth in R.C. 5733.05(A) and used to apportion net worth."

**{¶ 14}** R.C. 5733.05(A) provides that the numerator of the property factor fraction is to be "the net book value of all the corporation's property owned or used by it in this state." Goodyear argues that, for purposes of determining this numerator in its 1987 return, the pension surplus was not property "owned or used" by it. It emphasizes that the trust assets were held for the exclusive benefit of the pension plan participants, and that, pursuant to the terms of the salaried plan and trust, Goodyear had no legal right to use any of the funds unless and until the plan terminated. In so arguing, Goodyear urges incorporation of personal property ownership concepts into franchise tax law.

{¶ 15} R.C. 5733.03(H) provides that a corporation's annual report for franchise tax purposes shall state "[t]he location and value of the property owned or used by the corporation *as shown on its books*, both within and without the state, given separately." (Emphasis added.) Goodyear's argument is refuted by our prior recognition that, for franchise tax purposes, "book value" of property owned or used by a corporation is to be determined from "the books of a corporation which are generally regarded as the accounting records of such corporation and are kept in the ordinary course of the business of the corporation in accordance with any sound and generally recognized and approved accounting system." *Natl. Tube Co. v. Peck* (1953), 159 Ohio St. 98, 50 O.O. 74, 111 N.E.2d 11, paragraph five of the syllabus.

{¶ 16} Goodyear was required by standard accounting practice to recognize the pension gain on its balance sheet and does not argue that the pension refund amount should not have been shown on its books. By including the intangible asset representing the pension surplus on its books as an asset, it effectively acknowledged that, for franchise tax purposes, the surplus was an asset that it "owned or used." Therefore, the pension gain was required to be sitused and valued as property either within or without Ohio for purposes of determining the property factor required by R.C. 5733.05(A).

{¶ 17} Goodyear argues that inclusion of the words "owned or used * * * in this state" in R.C. 5733.05(A) implies a two-step analytical process for determination of the property factor numerator. It contends that determination of the situs of intangible property is required if, and only if, it is first separately determined that the property is owned or used by the taxpayer, as ownership is determined for personal property tax purposes.

{¶ 18} We reject Goodyear's suggestion that R.C. 5733.05(A) requires a two-step process of analysis to determine the value of property "owned or used * * * in this state." Goodyear observed that references to property "owned and used

* * * in this state" occur twice in R.C. 5733.05(A): the language is used not only in connection with calculation of the property factor, but also in providing that, "[i]n determining the value of intangible property, including capital investments, owned or used in this state by either a domestic or foreign corporation, the commissioner shall be guided by sections 5709.02 and 5709.03 of the Revised Code." However, in both places in R.C. 5733.05(A) where reference is made to property "owned or used  * * * in this state," the words incorporate the concept that all property sitused in Ohio is necessarily also property either owned or used by the taxpayer in Ohio. That is, value and situs are inextricably related for purposes of R.C. 5733.05(A).  If intangible property is owned or used in this state, then it must be sitused and valued in Ohio; and *vice versa*, if intangible property is sitused to Ohio, then it must be owned or used in Ohio and therefore it must be valued to Ohio.

{¶ 19} Moreover, for purposes of determination of franchise tax, Goodyear "used" the pension surplus.  R.C. 5701.08(D) provides:  "As used in Title LVII of the Revised Code * * * (D) [T]axable intangibles are 'used' when they or the avails thereof are being applied, *or are intended to be applied*, in the conduct of the business, whether in this state or elsewhere."  (Emphasis added.)  Even though Goodyear did not receive the proceeds from the pension surplus in 1986, it owned the right to receive the proceeds at some time in the future, not unlike owning a bond due at some time in the future.  It is not disputed that Goodyear received the proceeds in 1988.

{¶ 20} The next question is whether Goodyear owned or used the intangible property *in Ohio*. The general theory of the taxation of intangibles is that they are taxed at the residence of the owner (*mobilia sequuntur personam*).  That general theory is set forth in R.C. 5709.02, wherein it states, "All money, credits, investments, deposits, and other intangible property of persons residing in this state shall be subject to taxation, except as provided in this section or as otherwise provided or exempted in Title LVII of the Revised Code."

**{¶ 21}** For intangibles, R.C. 5733.05(A) refers a taxpayer to R.C. 5709.02 and 5709.03 to determine whether the intangible property should be sitused in Ohio or elsewhere ("In determining the value of intangible property, * * * the commissioner shall be guided by sections 5709.02 and 5709.03 of the Revised Code."). This reference to personal property tax statutes relating to situsing principles means that these statutes are to be used to determine whether an intangible is to be sitused to Ohio.

**{¶ 22}** In *Bush & Cook Leasing, Inc. v. Tracy* (1997), 79 Ohio St.3d 87, 90, 679 N.E.2d 1077, 1079, a franchise tax case, this court stated, "Under R.C. 5709.02, intangible personal property of persons 'residing in this state' is taxable in Ohio unless sitused in another state as a receivable under R.C. 5709.03(A)." Because Goodyear owned the intangible representing the pension surplus, and that intangible was sitused in Ohio, it was property owned or used in this state.

**{¶ 23}** R.C. 5709.03 designates exceptions to the general rule providing for the taxation of intangibles used in business. R.C. 5709.03 provides a listing of circumstances wherein intangibles such as accounts receivable, prepaid items, accounts payable, deposits, money, and investments should be considered to arise out of business transacted in a state other than that in which the owner resides. Goodyear is an Ohio resident and has not claimed that any of the special situsing circumstances listed in R.C. 5709.03 is applicable to the facts of this case.

**{¶ 24}** Moreover, Goodyear's position that the pension surplus should not be included in the property factor numerator is insupportable from a purely mathematical perspective. In calculating the property factor, Goodyear included the pension surplus as an intangible asset in the denominator, as part of all its property, wherever situated. However, Goodyear did not include any value for that intangible asset in the numerator of the property fraction that represents the net book value of the property owned or used by Goodyear in Ohio. Goodyear assigned *no value* to Ohio for the intangible surplus representing the pension surplus. However, it is axiomatic that the

total is equal to the sum of its parts, and, mathematically, the value of all of Goodyear's property wherever situated must equal the value of its property owned or used in Ohio plus the value of the property outside Ohio.

**{¶ 25}** Goodyear has not claimed that the pension surplus should be valued as property sitused somewhere other than Ohio. Goodyear merely contends that the pension surplus should not be valued in Ohio. If the pension surplus is an intangible asset that represents part of the value of Goodyear's property everywhere, then it must be sitused somewhere, and valued where it is sitused. If the pension surplus is not sitused outside Ohio, then it must be valued in Ohio. If the pension gain is sitused in Ohio, then it must be valued in Ohio and included in the numerator of the franchise tax property fraction.

**{¶ 26}** We conclude that the pension surplus was an intangible asset not exempt from being sitused in Ohio. Goodyear owned the intangible asset representing the pension surplus. The retirement plan surplus, as an intangible asset owned by an Ohio corporation whose principal office is in Ohio, and not falling within an exemption from being sitused in Ohio, is properly sitused in Ohio. It therefore is includible in the numerator of the property fraction for franchise tax purposes.

**{¶ 27}** Accordingly, the decision of the BTA, being reasonable and lawful, is affirmed.

*Decision affirmed.*

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————