SATURDAY ET AL., APPELLANTS, *v.* CLEVELAND
BOARD OF REVIEW ET AL., APPELLEES.

[Cite as *Saturday v. Cleveland Bd. of Rev.*,
142 Ohio St.3d 528, 2015-Ohio-1625.]

(No. 2014–0292—Submitted January 14, 2015—Decided April 30, 2015.)

PFEIFER, J.

{¶ 1} In this case, we determine whether a nonresident professional athlete who does not accompany his team to Ohio for a game in Cleveland must pay municipal income tax to Cleveland based on his team's appearance there. We hold that a professional athlete whose team plays a game in Cleveland but who remains in his home city participating in team-mandated activities is not liable for Cleveland municipal income tax.

Factual and Procedural Background

{¶ 2} Jeffrey B. Saturday is a retired professional football player. During the taxable year at issue, 2008, Saturday was a center employed by the Indianapolis Colts of the National Football League ("NFL"). During the 2008 season, the Colts played one game in Cleveland against the Browns. Because of an injury, Saturday neither played in nor attended the Cleveland game; instead, he spent the day in Indianapolis engaging in physical rehabilitation activities at the Colts' behest. (More than 72,000 other souls attended the Colts' dismal 10–6 victory over the Browns.) The Colts nevertheless withheld an amount of Cleveland

municipal income tax from Saturday's 2008 compensation and paid it to the city. Saturday and his wife, Karen, who filed joint income-tax returns, contend that Cleveland had no authority to impose its tax on the income of a nonresident who did not work within Cleveland's city limits during the taxable year.

### 1. The Saturdays' Refund Claim

{¶ 3} On December 18, 2009, the Saturdays sought from the Central Collection Agency ("CCA"), Cleveland's tax administration authority, a total refund of all income tax withheld and remitted to the city of Cleveland for tax year 2008. (They had previously filed a Cleveland tax return for 2008 showing that all tax had been paid through withholding and that they were entitled to a small refund.)

{¶ 4} Out of reported total municipal wages of $3,577,561.11, the Colts attributed $178,878 (approximately 5 percent of Saturday's 2008 income) to Cleveland under CCA Regulation 8:02(E)(6), which sets forth a "games-played" method of computing a nonresident professional athlete's municipal income tax base. Under the games-played method, the city claims the right to tax the amount of a professional athlete's annual income that is proportionate to the share of the team's preseason, regular season, and postseason games that were played in Cleveland. See CCA Regulation 8:02(E)(6). For example, if a team played 20 games in a year and one of those games was in Cleveland, Cleveland would apply its tax to one twentieth, or 5 percent, of each player's annual income. In another case announced today, *Hillenmeyer v. Cleveland Bd. of Rev.*, —— Ohio St.3d ——, 2015-Ohio-1623, —— N.E.3d ——, this court declares that method of computing a nonresident professional athlete's income tax base unconstitutional. Although the Saturdays advance some arguments that parallel those presented in *Hillenmeyer*, we decide this case on other grounds.

{¶ 5} The Saturdays requested a refund of $3,594. Identifying an error in the computation of the withholding, the CCA refunded the Saturdays a total of $322. But in a final administrative ruling issued on January 25, 2011, the CCA denied the claim for a full refund. The Saturdays filed an appeal to the City of Cleveland Board of Review by letter dated February 23, 2011.

### 2. Board of Review

{¶ 6} The board of review held a hearing on June 24, 2011. There was no live testimony at the hearing. Instead, counsel for the Saturdays and counsel for the Cleveland tax administrator presented documentary exhibits and arguments. The hearing was followed up by briefs of the parties.

{¶ 7} On September 20, 2011, the board of review issued its decision upholding the denial of the Saturdays' claims. The board first rejected the tax administrator's defenses of waiver and res judicata that were based on the Saturdays' having received and accepted earlier partial refunds due to corrected mathemati-

cal calculations. Next, the board held that the Saturdays failed to prove that the games-played method of income allocation was unreasonable, placing particular emphasis on the lack of live witnesses and their reliance on affidavits and other documentation at the hearing. Finally, the board characterized Saturday's absence from the Cleveland game—and Cleveland—as a paid sick day, which it held Cleveland had the authority to tax because Cleveland's nonresident-professional-athlete regulation expressly applied the tax to games from which an athlete was excused due to "illness or injury." *See* CCA Regulation 8:02(E)(6).

### 3. Board of Tax Appeals

{¶ 8} The Saturdays appealed to the Board of Tax Appeals ("BTA") on November 17, 2011. The parties waived a hearing there and submitted the case on the record and the briefs.

{¶ 9} The BTA issued its decision on January 28, 2014, affirming the board of review's determination. BTA No. 2011–4027, 2014 WL 504226 (Jan. 28, 2014). The BTA first disposed of the challenge to the games-played method on the basis of its decision in the *Hillenmeyer* case. *Id.* at *2. Next, the BTA considered the significance of Saturday's absence from the Cleveland game in 2008. Finding applicable to Saturday's situation two passages of the CCA's nonresident-professional-athlete regulation—that the tax should be withheld with respect to "the entire amount of compensation earned for games that occur in" Cleveland and that the Cleveland allocation includes compensation for games the athlete "was excused from playing because of injury or illness," CCA Regulation 8:02(E)(6)— the BTA concluded, citing its *Hillenmeyer* decision, that Cleveland's municipal-income-tax ordinance and the nonresident-professional-athlete regulation do not operate in contravention of any state statute or Ohio case precedent and constitute a " 'valid exercise of the city's municipal power to tax.' " *Id.* at *2–3, quoting *Gesler v. Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, 3 N.E.3d 1177, ¶ 22. According to the BTA, it possessed "no jurisdiction to determine the constitutionality or reasonableness of the ordinance, including its application to athletes absent from games due to injury or illness." *Id.* at *3. Thereafter, the Saturdays appealed to this court.

### 4. Evidence Regarding Saturday's Employment

{¶ 10} The evidence the Saturdays presented in this case strongly parallels that presented by Hillenmeyer in his case, with the difference that Thomas DePaso, associate general counsel to the NFL Players' Association and a former NFL player, testified by affidavit in the Saturdays' case rather than live at the board of review hearing. Just as the live testimony in *Hillenmeyer* referred to the NFL collective-bargaining agreement and the individual player contracts, so does DePaso's affidavit in this case. It discusses the phases of an NFL player's

work year: the three-day mandatory mini-camp; the preseason training camp; the regular season with its work week including meetings, practices, and games; and the postseason.

{¶ 11} Other evidence included the affidavits of both Jeffrey and Karen Saturday, the affidavit of the Colts' vice president of finance, Kurt Humphrey, and the affidavit of the Colts' head athletic trainer, Dave Hammer. In addition to supporting DePaso's testimony concerning the duties and compensation of Saturday as an NFL player, these affidavits establish that Saturday suffered an injury during the 2008 season that rendered him inactive for four games, including the Cleveland game that year. They also document Saturday's treatment plan for the injury through a log that is kept in the ordinary course of business. The log shows that Saturday underwent rehabilitation for calf and knee injuries on the weekend of November 29 and 30, 2008—the dates on which the Colts traveled to Cleveland and played the game there.

{¶ 12} DePaso stated in his affidavit that NFL teams require injured players to follow a rehabilitation program and that players are subject to fines for failing to attend scheduled appointments with team physicians or trainers or for "material failure to follow a rehabilitation program prescribed by a Club physician or trainer." Jeffrey Saturday's affidavit asserted that during the period of his 2008–season injury he "attended team meetings and performed physical rehabilitation," adding that "failure to perform these services to the Colts would have subjected me to fines." The Humphrey affidavit shows the travel manifest relating to the 2008 Cleveland game, a document kept in the ordinary course of business by the Colts; it shows which team members went to Cleveland for the game. Saturday was not with the Colts in Cleveland that weekend.

## Law and Analysis

{¶ 13} Under their first proposition of law, the Saturdays argue that the "taxation of the wages of a nonresident employee who performed no work or services in Cleveland is contrary to the Cleveland Codified Ordinances and Ohio Law." Cleveland counters by arguing that its municipal-income-tax ordinance authorizes the tax by applying it to "qualifying wages" that are "attributable to" Cleveland. See Cleveland Codified Ordinances 191.0501(b)(1). Further, Cleveland relies on the specific provisions of its regulation governing the ordinance's application to nonresident professional athletes, placing particular emphasis on the inclusion in the games-played ratio of "games the athlete * * * was excused from playing because of injury or illness." CCA Regulation 8:02(E)(6). We conclude that Cleveland's municipal-income-tax ordinance and its nonresident-professional-athlete regulation do not allow for the taxation of the Saturdays' 2008 income.

{¶ 14} Cleveland imposes a tax on "all qualifying wages, earned and/or received on and after January 1, 1967, by nonresidents of the City for work done or services performed or rendered within the City or attributable to the City." Cleveland Codified Ordinances 191.0501(b)(1). Certainly, none of Saturday's work was performed in Cleveland. Nor can his work on the day of the Cleveland game, or on any other day, be attributed to Cleveland, since the evidence shows that Saturday was in Indianapolis on game day, engaging in physical rehabilitation in preparation for future games.

{¶ 15} CCA Regulation 8:02(E)(6), which describes how the tax applies to nonresident professional athletes, contains two potentially significant passages. It reads:

6. Professional athletes.

In the case of employees who are non-resident professional athletes, the deduction and withholding of personal service compensation shall attach to the *entire amount of compensation earned for games that occur in the taxing community.* In the case of a non-resident athlete not paid specifically for the game played in a taxing community, the following apportionment formula must be used:

The compensation earned and subject to tax is the total income earned during the taxable year, including incentive payments, signing bonuses, reporting bonuses, incentive bonuses, roster bonuses and other extras, multiplied by a fraction, the numerator of which is the number of exhibition, regular season, and post-season games the athlete played (or was available to play for his team, as for example, with substitutes), *or was excused from playing because of injury or illness,* in the taxing community during the taxable year, and the denominator of which is the total number of exhibition, regular season, and post-season games which the athlete was obligated to play under contract or otherwise during the taxable year, *including games in which the athlete was excused from playing because of injury or illness.*

(Emphasis added.)

{¶ 16} First, the regulation extends the tax to the "entire amount of compensation earned for games that occur in the taxing community." Cleveland argues that NFL players are paid to play games and that Saturday's compensation related to the playing of the game in Cleveland even though Saturday was not present for it.

{¶ 17} But when the regulation is read in the context of the ordinance—"for work done or services performed or rendered within the City or attributable to the City"—and also in light of our holding in *Hillenmeyer* that players such as Saturday are compensated for activity other than playing games, then Cleveland's reading of the regulation becomes untenable. In *Hillenmeyer,* this court determines that the "duty-days" method of calculating the amount of income that is subject to Cleveland municipal tax "properly includes as taxable income only that compensation earned in Cleveland by accounting for all the work for which an NFL player such as Hillenmeyer is paid, rather than merely the football games he plays each year." *Hillenmeyer,* —— Ohio St.3d ——, 2015-Ohio-1623, —— N.E.3d ——, at ¶ 49.

{¶ 18} Since NFL players are contractually employed to provide services to their employers from the beginning of the preseason through the end of the postseason, including mandatory mini-camps, the official preseason training camp, meetings, practice sessions, and all preseason, regular season, and postseason games, and since they are required to undergo rehabilitation for injuries, Saturday's service to his employer encompassed his rehabilitation activity outside Cleveland on the day of the Colts–Browns game in Cleveland in 2008. That is, Saturday was performing his job duties in Indianapolis on game day. It follows that the language of the regulation—that the "entire amount of compensation earned for games that occur in the taxing community" is susceptible to municipal tax—must be construed more narrowly under the present circumstances to permit the taxation of compensation only when the player was actually present at the Cleveland game and earning compensation for his presence at that game.

{¶ 19} The second potentially significant passage in the regulation is the part that describes the ratio for allocating income to Cleveland for tax purposes. Both in constructing the numerator and the denominator for the games-played calculation, the regulation includes games the athlete "was excused from playing because of injury or illness." Cleveland argues that because Saturday was "excused from playing" the Cleveland game, the tax applies to him under this provision.

{¶ 20} This argument is unavailing for the simple reason that nothing in the regulation addresses the additional significant fact of Saturday's complete absence from the city of Cleveland at the time of the game (and at every other time during the year). Had Saturday traveled to Cleveland with the team and been "excused from playing," the language of the regulation might support imposing the tax. But here, Saturday was not even present at the game, and the regulation says nothing about what to do when the athlete is not even in the city where the game is being played. Thus, the regulation is at best ambiguous as to whether the tax is levied on Saturday.

534

{¶ 21} At least two canons of construction militate against Cleveland's expansive interpretation of the city's income-tax law, given that the record here shows not only that the taxpayer was not in Cleveland on game day but also that he was performing job duties in another city on that day. First, it is a central tenet of tax jurisprudence that "a statute that imposes a tax requires strict construction against the state, with any doubt resolved in favor of the taxpayer." *Columbia Gas Transm. Corp. v. Levin,* 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 34, citing *Gulf Oil Corp. v. Kosydar,* 44 Ohio St.2d 208, 339 N.E.2d 820 (1975), paragraph one of the syllabus. *See also Bosher v. Euclid Income Tax Bd. of Rev.,* 99 Ohio St.3d 330, 2003-Ohio-3886, 792 N.E.2d 181, ¶ 14 (applying the same principle to municipal income tax). Second, Cleveland's interpretation violates the "implied condition of all statutes relating to taxation that they have no extraterritorial effect." *Schneider v. Laffoon,* 4 Ohio St.2d 89, 96, 212 N.E.2d 801 (1965). Quite simply, Saturday's absence from Cleveland and his performance of duties elsewhere on the same day raise a strong suggestion that the imposition of Cleveland tax would constitute extraterritorial taxation.

{¶ 22} Therefore, we hold that neither Cleveland's municipal-income-tax ordinance nor the regulation governing its application to nonresident professional athletes authorizes the imposition of tax on Saturday's income under the circumstances of this case. Because we dispose of this case by construing the ordinance and the regulation against Cleveland's position, we need not reach the other statutory and constitutional issues raised by the Saturdays, nor do we need to address the arguments advanced by Cleveland as to why those other issues have been waived or are otherwise barred from our consideration.

## Conclusion

{¶ 23} We hold that Cleveland lacked authority under its city ordinance and its regulations to impose a tax on Saturday's income, given that none of the services for which he was compensated were performed in Cleveland during 2008. Accordingly, we reverse the decision of the BTA. We also remand with the instruction that the Saturdays be granted a full refund of Cleveland municipal income tax paid for 2008, along with any amount of interest that is proper pursuant to statute, city charter, or local ordinance.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

Hemenway & Barnes, L.L.P., Stephen W. Kidder, and Ryan P. McManus; and Zaino, Hall & Farrin, L.L.C., and Richard C. Farrin, for appellants.

Barbara A. Langhenry, Cleveland Director of Law, and Linda L. Bickerstaff, Assistant Director of Law, for appellees.