[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Willacy v. Cleveland Bd. of Income Tax Rev.,* Slip Opinion No. 2020-Ohio-314.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-314

WILLACY, APPELLANT, *v.* CLEVELAND BOARD OF INCOME TAX REVIEW ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Willacy v. Cleveland Bd. of Income Tax Rev.,* Slip Opinion No. 2020-Ohio-314.]

*Municipal income tax—Stock options employee received as compensation while working in Cleveland were not exercised until after employee retired and moved out of state—Exercise of stock options generated taxable qualifying wages under Cleveland Codified Ordinances—Cleveland properly imposed income tax on the stock-option income.*

(No. 2018-0794—Submitted July 9, 2019—Decided February 4, 2020.)

APPEAL from the Board of Tax Appeals, No. 2017-513.

_____

**Per Curiam.**

{¶ 1} Appellant, Hazel M. Willacy, was employed by the Sherwin-Williams Company in Cleveland from 1980 until she retired in 2009 and moved to Florida.

During Willacy's employment, Sherwin-Williams compensated her, in part, with stock options. When she exercised some of those options in 2014 and 2015, Cleveland collected income tax on their value. Willacy appeals from the denial of her claim for refunds. This case presents the question whether Cleveland may tax the options as income when Willacy did not work or live in the city during the tax years at issue.

{¶ 2} Willacy primarily argues that Cleveland's imposition of the tax violated due process. She also raises nonconstitutional arguments. We conclude that Willacy's arguments lack merit and hold that Cleveland properly taxed the compensation she received in 2014 and 2015.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} In 2007, when Willacy was working in Cleveland, Sherwin-Williams granted her options to purchase 2,715 shares of Sherwin-Williams common stock at $63.44 a share. The terms of the grant created a nine-year window for Willacy to exercise the options: she could first exercise them after one year, and they would expire on the tenth anniversary of the grant date. In 2009, Willacy retired and became a Florida resident.

{¶ 4} In 2014, Willacy exercised the options by purchasing 315 shares at the option price and immediately selling them at a market price of $192.646 a share, generating proceeds of more than $40,000. As required under Cleveland Codified Ordinances 191.1302(a), Sherwin-Williams withheld Willacy's municipal income-tax obligation (2 percent of the proceeds) and paid it to Cleveland. In 2015, Willacy again exercised her options by purchasing 1,800 shares at the option price and immediately selling them at a market price of $275 a share, generating proceeds of more than $377,000. Sherwin-Williams again withheld Willacy's municipal income-tax obligation. There is no dispute that Willacy did not live or work in Cleveland in 2014 or 2015.

{¶ 5} Willacy sought refunds from Cleveland based on the fact that she had resided in Florida during tax years 2014 and 2015. Cleveland's income-tax administrator, appellee Nassim M. Lynch, denied the refund requests. Willacy appealed that decision to appellee Cleveland Board of Income Tax Review, which affirmed the denial of the refunds. She then appealed to the Board of Tax Appeals ("BTA"), which also affirmed the denial. Willacy appealed the BTA's decision to the Tenth District Court of Appeals, and we granted her petition to transfer the appeal to this court under former R.C. 5717.04, 2017 Am.Sub.H.B. No. 49. 153 Ohio St.3d 1485, 2018-Ohio-3867, 108 N.E.3d 83.

## II. ANALYSIS

{¶ 6} Willacy raises three propositions of law. In her first proposition, she argues that Cleveland's tax laws, as applied to her, violate the Due Process Clause of the United States Constitution and the Due Course of Law Clause of the Ohio Constitution. Her second proposition of law reiterates some of those due-process arguments and also raises separate nonconstitutional arguments addressing why, in her view, Cleveland lacked authority to tax her 2014 and 2015 stock-option income. Willacy's third proposition of law asserts an additional nonconstitutional argument.

### A. Standard of review

{¶ 7} We must determine whether the BTA's decision is reasonable and lawful. R.C. 5717.04. In doing so, we defer to the BTA's factual findings, so long as they are supported by reliable and probative evidence in the record. *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 152, 648 N.E.2d 483 (1995). But we review legal issues de novo. *Pi In The Sky, L.L.C. v. Testa,* 155 Ohio St.3d 113, 2018-Ohio-4812, 119 N.E.3d 417, ¶ 11. Because Willacy is not challenging the BTA's factual findings, our review is de novo.

### B. Nonconstitutional issues

*1. Willacy's exercise of the stock options generated taxable*

*"qualifying wages"—not nontaxable "intangible income"*

**{¶ 8}** Cleveland imposes its income tax on "all qualifying wages, earned and/or received * * * by nonresidents of the City for work done or services performed or rendered within the City or attributable to the City." Cleveland Codified Ordinances 191.0501(b)(1). *See also* Cleveland Codified Ordinances 191.0101(a) (levying municipal income tax on "qualifying wages"). Under Cleveland Codified Ordinances 191.031501, qualifying wages include "compensation arising from the sale, exchange or other disposition of a stock option, the exercise of a stock option, or the sale, exchange or other disposition of stock purchased by the stock option." *See also* former R.C. 718.03(A)(2)(b)(ii), 2012 Am.Sub.H.B. No 386, eff. June 11, 2012 (now R.C. 718.01(R)(2)(b)) (defining "qualifying wages" to include compensation attributable to the exercise of employee stock options unless exempted by ordinance or resolution). Regulation 3:01(B)(8), promulgated by Cleveland's tax-administration authority, provides that when a stock option is exercised, "regardless of the treatment by the Internal Revenue Service, the employer is required to withhold on the difference between the fair market value upon sale, exchange, exercise or other disposition of the stock option and the amount paid by the employee to acquire the option. The entire difference shall be allocated to and taxable by the employment city."[1]

**{¶ 9}** Willacy does not dispute that she received the stock options in 2007 as compensation for employment services she provided to Sherwin-Williams. Thus,

---

1. Willacy argues that Regulation 3:01(B)(6) applies instead of Regulation 3:01(B)(8). Regulation 3:01(B)(6) applies when "compensation [was] paid or received in property," while Regulation 3:01(B)(8) applies when "[s]tock options [were] given as compensation." Because Regulation 3:01(B)(8) is the more specific rule, it applies here. *See MacDonald v. Cleveland Income Tax Bd. of Rev.*, 151 Ohio St.3d 114, 2017-Ohio-7798, 86 N.E.3d 314, ¶ 27 ("when there is a conflict between a general provision and a more specific provision in a statute, the specific provision controls").

under Cleveland law, Willacy's stock options were taxable qualifying wages when she exercised them in 2014 and 2015. And consistent with Cleveland law, Sherwin-Williams withheld and paid to Cleveland Willacy's tax obligation, calculated based on the difference between the option price and the exercise price.

{¶ 10} This is a settled approach to imposing income tax on stock options. In *Commr. of Internal Revenue v. LoBue*, 351 U.S. 243, 247, 76 S.Ct. 800, 100 L.Ed. 1142 (1956), the court concluded that when an employer transfers options to an employee based on the services the employee has provided, the transfer constitutes compensation. And in *Rice v. Montgomery*, 104 Ohio App.3d 776, 663 N.E.2d 389 (1st Dist.1995), a municipality had measured the value of stock options based on the difference between the option and market prices at the time the options were exercised. The First District Court of Appeals upheld that method of valuing the stock options, explaining:

Quantifying the value of a stock option at the time of its grant is a complex task, subject to the vagaries of market forecast and compounded by the fact that no ready market can exist for nontransferable stock options. The I.R.S. resolves the difficulty of valuing a nontransferable stock option by waiting until the option is exercised, at which time there is a recognition of income equal to the difference between the option price and the fair market value of the stock at the time of the exercise. At the moment that the income is recognized, a fair market value can be assigned to the stock option.

* * *

We find nothing in the general law of Ohio or in the [municipality's] tax ordinance and regulations which precludes the city taxing authority from employing the same methodology of valuing a stock option as does the I.R.S.

*Id*. at 781. Other Ohio courts have followed the same approach. *See Salibra v. Mayfield Hts. Mun. Bd. of Appeal*, 10th Dist. Franklin No. 14AP-890, 2016-Ohio-276, ¶ 22-23; *Wardrop v. Middletown Income Tax Rev. Bd*., 12th Dist. Butler No. CA2007-09-235, 2008-Ohio-5298, ¶ 43-47; *Hartman v. Cleveland Hts*., 8th Dist. Cuyahoga No. 66074, 1994 WL 422284, *4 (Aug. 11, 1994).

{¶ 11} Willacy nevertheless argues that her income does not constitute qualifying wages but rather is "intangible income" derived from the sale of intangible property. Intangible income, unlike qualifying wages, is exempt from income taxation under state law and Cleveland municipal law. *See* former R.C. 718.01(H)(3), 2013 Am.Sub.H.B. No. 51, eff. July 1, 2013 (now R.C. 718.01(C)(2)) (generally prohibiting municipal taxation of "intangible income"); former R.C. 718.01(A)(5), 2013 Am.Sub.H.B. No. 51, eff. July 1, 2013 (now R.C. 718.01(S)) (defining "intangible income" to include "income yield, interest, capital gains, dividends, or other income arising from the ownership, sale, exchange, or other disposition of intangible property"); Cleveland Codified Ordinances 191.0901(i) (exempting "[i]nterest, dividends, gains, and other revenue from intangible property described in [former] R.C. 718.01(A)(5)"); Cleveland Codified Ordinances 191.031001 (" 'intangible income' means that income specified in R.C. [former] 718.01(A)(5)").

{¶ 12} Willacy primarily relies on *Hickey v. Toledo*, 143 Ohio App.3d 781, 787, 758 N.E.2d 1228 (6th Dist.2001), in which the Sixth District Court of Appeals stated that a "stock option is intangible property." But she fails to acknowledge that the *Hickey* court, relying on *Rice*, went on to state that "when stock options are received by an employee as compensation, they may be properly taxed as compensation." *Id*. Because Willacy does not dispute that she earned the options as compensation, she has not shown that her proceeds should be classified as intangible income.

{¶ 13} Willacy also suggests that the profit from the options must be classified as intangible income based on her status as a nonresident retiree. But she provides no support for the proposition that the classification of income may change based on the recipient's change in employment status and residency. We therefore reject this argument.

*2. Cessante ratione legis cessat et ipsa lex is a common-law principle that cannot be used to abrogate municipal ordinances*

{¶ 14} As explained above, Cleveland law provides that stock-option compensation is taxed at the time the options are exercised. In her third proposition of law, Willacy argues that we should "abolish" that law because, she contends, "advances in the fields of economics and accounting" (i.e., development of the "Black-Scholes algorithm" and the "binomial options pricing model") now allow options to be valued when they are granted, thus making it unnecessary to wait until options are exercised before taxing them. She invokes the maxim cessante ratione legis cessat et ipsa lex (when the reason for a legal rule ceases, the law itself must cease). In response, appellees argue that based on how Willacy's wages were reported, it could not have taxed her differently, and that in any event, it uses a "far superior" method than the method she proposes.

{¶ 15} We need not determine whether valuation and taxation at the time of the grant was possible or preferable, because the cessante ratione principle is rooted in common law and does not apply to applications of statutory law. *See Funk v. United States*, 290 U.S. 371, 383-385, 54 S.Ct. 212, 78 L.Ed. 369 (1933). In all of the cases that Willacy cites in which we relied on cessante ratione, we cited the maxim in concluding that a *common-law* rule either should be abandoned or held not to apply under the facts presented. *See Lathrop Co. v. Toledo*, 5 Ohio St.2d 165, 176, 214 N.E.2d 408 (1966); *Borland's Lessee v. Marshall*, 2 Ohio St. 308, 316-317 (1853); *Simmons v. State*, 7 Ohio 116, 117 (1835). Although Willacy also cites a court-of-appeals case that did involve the applicability of a statute, that court did not

endorse the *abrogation* of legislation altogether (as Willacy would have us do). *See Grogan Chrysler-Plymouth, Inc. v. Gottfried*, 59 Ohio App.2d 91, 95, 392 N.E.2d 1283 (6th Dist.1978), fn. 4. In *Grogan*, the court simply concluded that the statute did not apply under the facts presented. *Id.*

{¶ 16} We have long refrained from assuming a legislative role. *See, e.g., Morris Coal Co. v. Donley*, 73 Ohio St. 298, 303-304, 76 N.E. 945 (1906). Contrary to what Willacy suggests, the cessante ratione principle is not a license for us to abolish parts of the Cleveland tax code simply because factual assumptions and policy considerations underlying the law may have changed since its enactment. Accordingly, we reject Willacy's third proposition of law.

*3. Willacy forfeited her remaining nonconstitutional arguments*

{¶ 17} Willacy also argues that Cleveland must refund the tax under the doctrine of res judicata because the city issued such refunds to her in earlier tax years, that the tax is barred by a statute of limitations, and that Cleveland has not properly adopted its Rules and Regulations. She failed to preserve these arguments before the BTA. We therefore will not consider them. *See Buckeye Internatl., Inc. v. Limbach*, 64 Ohio St.3d 264, 267, 595 N.E.2d 347 (1992).

## C. Constitutional issues

{¶ 18} In her first proposition of law, Willacy argues that multiple Cleveland ordinances and regulations, as applied to her, violate federal and state due-process protections by taxing income she received in tax years when she was not employed or present in Cleveland. Relatedly, in her second proposition of law, Willacy invokes Cleveland Codified Ordinances 191.0901(m), which provides that Cleveland's income tax "shall not be levied on * * * [c]ompensation and net profits, the taxation of which is prohibited by the United States Constitution."

{¶ 19} "Since 1887, this court has equated the Due Course of Law Clause in Article I, Section 16 of the Ohio Constitution with the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *State v. Aalim*, 150 Ohio

St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 15. Willacy does not argue that we should separately analyze the federal and state constitutional provisions. Thus, although she invokes the Ohio Constitution, our analysis is guided by caselaw applying the federal Due Process Clause.

*1. Collateral estoppel does not bar Cleveland from defending*
*the constitutionality of its tax laws*

{¶ 20} Willacy first argues that collateral estoppel bars appellees' arguments concerning the due-process issue because, according to Willacy, we rejected those arguments in *Hillenmeyer v. Cleveland Bd. of Rev.*, 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164, and *Saturday v. Cleveland Bd. of Rev.*, 142 Ohio St.3d 528, 2015-Ohio-1625, 33 N.E.3d 46. Collateral estoppel "precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action." *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 112, 254 N.E.2d 10 (1969), *overruled in part on other grounds*, *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). As Willacy and the appellees did not previously litigate these claims in a prior action, collateral estoppel does not apply.

*2. Cleveland's taxation of Willacy's income satisfies the*
*Due Process Clause's twofold test*

{¶ 21} Article XVIII, Section 3 of the Ohio Constitution authorizes municipalities to impose an income tax. *Angell v. Toledo*, 153 Ohio St. 179, 91 N.E.2d 250 (1950), paragraph one of the syllabus. But that authority is limited by the Due Process Clause, which requires a municipality to have jurisdiction before imposing a tax. *See Miller Bros. Co. v. Maryland*, 347 U.S. 340, 342, 74 S.Ct. 535, 98 L.Ed. 744 (1954). We have referred to a municipality's attempt to impose a tax outside the scope of its jurisdiction as "extraterritorial taxation." *Hillenmeyer* at ¶ 39-40.

{¶ 22} The Due Process Clause establishes a "twofold test" for determining whether a taxing authority exceeded its jurisdiction. *T. Ryan Legg Irrevocable Trust*

*v. Testa*, 149 Ohio St.3d 376, 2016-Ohio-8418, 75 N.E.3d 184, ¶ 64; *Hillenmeyer* at ¶ 40. Due process first requires "some definite link, some minimum connection" between the local taxing authority "and the person, property or transaction it seeks to tax." *Miller Bros.* at 344-345. Second, it demands the presence of a rational relationship between the income taxed by the jurisdiction and the income-producing activity or property within that jurisdiction. *See Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 273, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978). These inquiries involve distinct but related concerns: While the former focuses on the presence of either in personam jurisdiction over the taxpayer or in rem jurisdiction over her income or property, the latter focuses on how much of a nonresident's income the local taxing authority may fairly reach.

{¶ 23} It is well established that regardless of the taxpayer's residency status, the first prong is satisfied when a state or locality imposes taxes on income arising from work performed within the jurisdiction. In such cases, there is a sufficient connection between the taxing entity and the taxed party. *Hillenmeyer*, 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164, at ¶ 42.

{¶ 24} The second part of the due-process test requires a determination of the extent to which the nonresident's income "is fairly attributable either to property located in the state or to events or transactions which, occurring there, are subject to state regulation and which are within the protection of the state and entitled to the numerous other benefits which it confers." *Internatl. Harvester Co. v. Wisconsin Dept. of Taxation*, 322 U.S. 435, 441-442, 64 S.Ct. 1060, 88 L.Ed. 1373 (1944). The question under this prong is whether the income sought to be taxed is fairly attributable to the taxpayer's activities in the taxing jurisdiction. *Id.* at 442. This second prong comes up most prominently in cases in which the taxpayer has income from multiple jurisdictions. In such cases, the taxing jurisdiction can reach only the portion of the income that is reasonably associated with activity in that jurisdiction. *See Hillenmeyer* at ¶ 46.

{¶ 25} We confronted these due-process requirements in *Couchot v. Ohio State Lottery Comm.*, 74 Ohio St.3d 417, 659 N.E.2d 1225 (1996), a case involving a Kentucky resident who won the Ohio lottery, with the prize payable in 20 annual installments. *Id*. at 418. After redeeming his winning ticket in Columbus, Couchot apparently never returned to Ohio. We upheld the tax against Couchot's due-process challenge, explaining that for a state to trigger its taxing power over a nonresident, "there must be a connection between the state and what it seeks to tax, created in part by the event or transaction that generated the gain." *Id*. at 426. We found such a connection because Couchot's income arose from his participation in Ohio's lottery. *See id*. at 422, 426. We likewise determined that Couchot's income was fairly attributable to Ohio, because the state had incurred "social and governmental costs * * * in generating the income of which Couchot [was] the fortunate beneficiary." *Id*. at 423. And we reached this conclusion despite the fact that the payments would be made over a 20-year period. *Id*. at 425.

{¶ 26} More recently, we expressly applied the twofold test in addressing a due-process challenge in *Hillenmeyer*, a case involving Cleveland's imposition of income tax on a nonresident professional football player. 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164, at ¶ 1-2, 40. Hillenmeyer's minimum connection with Cleveland was not at issue; he had engaged in income-producing activities by playing games in the city. *See id*. at ¶ 1. That meant that Cleveland had jurisdiction over the portion of his compensation that was earned for services performed in the city. *Id*. at ¶ 43. The main question in *Hillenmeyer* concerned whether Cleveland had fairly determined the portion of Hillenmeyer's income that was attributable to his work in the city. *See id*. at ¶ 44. On that question, we held that "compensation must be allocated to the place where the employee performed the work." *Id*. at ¶ 45. We concluded that Cleveland's method for taxing nonresident professional athletes violated due process because it imposed income tax on "compensation earned while [the taxpayer] was working outside Cleveland." *Id*. at ¶ 49.

**{¶ 27}** Under this well-established standard, we conclude that Cleveland's taxation of Willacy's stock-option income does not violate the Due Process Clause. Here, the income came from work she performed in Cleveland, and she thus satisfies the minimum-connection requirement. Because all the stock-option income was compensation for that work, all the stock-option income is fairly attributable to her activity in Cleveland.

**{¶ 28}** Notwithstanding this body of law, Willacy argues that due process prohibits Cleveland from taxing a nonresident's compensation if the nonresident did not receive the income in the same tax year as the income-producing activities that generated the income. But the claim that a due-process problem arises because of a time gap between the income-producing activity and the imposition of a tax on compensation for that activity has no basis in law, precedent, or common sense. The fact that income was not received until some period after the income-producing work was performed does not change the fact that the income arose from the income-producing work. Once it was established that Willacy's earnings from exercising the options were compensation for her work in Cleveland, any due-process requirements were satisfied. In fact, Willacy's proposed rule is inconsistent with settled law providing that the income-producing event (e.g., earning compensation) need not coincide with the taxable event (e.g., receiving income). *See MacLaughlin v. Alliance Ins. Co.*, 286 U.S. 244, 250, 52 S.Ct. 538, 76 L.Ed. 1083 (1932) ("Congress, having constitutional power to tax the gain, and having established a policy of taxing it, may choose the moment of its realization and the amount realized, for the incidence and the measurement of the tax" [citation omitted]); *Couchot*, 74 Ohio St.3d at 426, 659 N.E.2d 1225 ("A state, having the power to tax by virtue of the circumstance from which the income is derived, may choose the time the income is received as the incidence and measurement of the tax").

**{¶ 29}** In essence, what Willacy received was deferred compensation for her Cleveland-based work. Neither the form of the compensation—stock options—nor

the timing of the compensation—after she left the state—undercuts the fact that it is fairly attributable to her work in Cleveland and hence subject to taxation by the city.

{¶ 30} Willacy resists this result by arguing that Cleveland lacks jurisdiction over her property or activities because, she says, the property at issue (the stock options) and her activities (her investment management) both were in Florida where she resided. She cites the maxim mobilia sequuntur personam, which provides that intangible property is taxed at the residence of the owner. *See Goodyear Tire & Rubber Co. v. Tracy*, 85 Ohio St.3d 615, 619, 710 N.E.2d 686 (1999). Under this theory, her residency when the stock appreciated is what matters. In the same vein, she argues that Cleveland taxed her postretirement investment-management activity.

{¶ 31} Both arguments require an improper classification of Willacy's income. As discussed above, the income at issue is "qualifying wages," not "intangible income." Mobilia sequuntur personam does not apply here, because Cleveland is not taxing income derived from the sale of intangible property; it is taxing Willacy's compensation. And Willacy's income-producing activity was the work she performed in Cleveland to earn the options; the decisions she made while in Florida did not generate the income. Accordingly, we reject Willacy's argument that Cleveland lacks jurisdiction.

{¶ 32} In a similar mode, Willacy suggests that most of the earnings are not attributable to her Cleveland-based work, because much of the accrual in value of the stock occurred after she moved to Florida. But this argument also fails. What Willacy was given as compensation for her work were options. Like many assets, options can vary in value over time. But this variability in value does not make them less attributable to the work performed. The decision when to exercise the options and thus pay taxes on her compensation was Willacy's. Willacy could have exercised the options and paid tax on their value any time after one year from the date they were granted. The fact that Willacy chose to wait to exercise the options does not change the fact that she earned the options through her work in Cleveland. Because

the options were granted for work performed in Cleveland, it does not offend notions of due process for Cleveland to tax the options based on the date that Willacy chose to exercise the options.

{¶ 33} Willacy argues that it would have been preferable to tax the options in the year that they were granted. But this is a policy argument, not a matter of due-process. In retrospect, after a stock's value has increased, many taxpayers would prefer to have paid taxes based on the value of the option on the date it was granted. But stocks do not always go up. Taxing a nontransferable option in the year it is granted means that the taxpayer is forced to pay taxes on an asset that is not generating any cash, and which the taxpayer cannot sell to pay the tax bill. The alternative—taxing the value at the time the option is exercised—avoids that problem but potentially results in higher taxes if the stock price goes up. There may be sensible policy arguments for preferring one of these tax schemes over the other. But that is not for this court to decide. And Willacy has pointed to no authority—and we can find none—that suggests that due process requires a jurisdiction to make one of these policy choices rather than the other. Indeed, courts in other jurisdictions have rejected arguments similar to those Willacy makes here. *See Allen v. Commr. of Revenue Servs.*, 324 Conn. 292, 321-322, 152 A.3d 488 (2016); *Ralston Purina Co. v. Leggett*, 23 S.W.3d 697, 701 (Mo.App.2000); *See also Marchlen v. Mt. Lebanon*, 560 Pa. 453, 460-461, 746 A.2d 566 (2000).

{¶ 34} We also reject Willacy's related argument that Cleveland's employer-withholding requirement violates due process. This argument fails because the United States Supreme Court has approved this type of indirect collection of a nonresident's tax obligation. *See Internatl. Harvester*, 322 U.S. at 444, 64 S.Ct. 1060, 88 L.Ed. 1373 (recognizing that "some practically effective device [may] be necessary in order to enable the state to collect its tax," such as "by imposing on the corporation the duty to withhold the tax").

### III. CONCLUSION

{¶ 35} We hold that Cleveland's taxation of Willacy's compensation in 2014 and 2015 was required under municipal law and did not violate her due-process rights. We therefore affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

FISCHER, J., dissents, with an opinion.

_____

**FISCHER, J., dissenting.**

{¶ 36} Because I believe that due process requires some minimal geographic and temporal connection between the state and the person or thing being taxed and that such a connection is missing here, I respectfully dissent.

### I. Background

{¶ 37} Options have a long and storied history dating back to at least the 17th century when Dutch tulip farmers started utilizing contracts that would give buyers, in exchange for a premium paid upfront, the right—but not the obligation—to purchase a future shipment of flower bulbs at a fixed price. Thompson, *The tulipmania: Fact or artifact?*, 130 Public Choice 99, 101 (January 2007).

{¶ 38} Though the underlying assets are more complicated today than flower bulbs, options continue to operate in much the same way and play an increasingly important role in the modern economy. Banerji, *Investors Flock to Options Bets*, Wall Street Journal (Sept. 30, 2019) ("Assets under management for mutual and exchange-traded funds that use options strategies have jumped 24% this year * * *. They hit a record $22 billion at the end of August"). Stock options, for example, let companies provide their employees an attractive and alternative form of compensation. *See* von Lilienfeld-Toal and Ruenzi, *CEO Ownership, Stock Market Performance, and Managerial Discretion*, 69 Journal of Finance 1013

(June 2014) (finding that companies run more efficiently and generate larger returns for investors when their chief executive officers have equity in the company).

{¶ 39} When used as a form of compensation, however, stock options can introduce certain constitutional concerns when tax time comes if the person being taxed at the local level no longer resides in the city or state—that is, within the jurisdiction—where the options were granted. This case illustrates the problems inherent in those circumstances.

{¶ 40} In 2007, the Sherwin-Williams Company granted appellant, Hazel Willacy, options to purchase 2,715 shares of its common stock at a strike price of $63.44 a share. Long before exercising these options, Willacy retired and moved to Florida. It was only after Willacy had resided in Florida for five years that the city of Cleveland attempted to collect 2 percent of the proceeds when Willacy exercised her options in 2014 and 2015.

{¶ 41} Believing that it was unconstitutional for a city that she did not reside or work in to tax her, Willacy asked appellee the city's tax administrator for a refund. The tax administrator denied her request, and Willacy unsuccessfully appealed the denial to appellee Cleveland Board of Income Tax Review and then to the Board of Tax Appeals.

{¶ 42} The majority opinion ultimately concludes, as did the Board of Tax Appeals, that the imposition of this tax on Willacy does not violate due process. I respectfully disagree.

## II. Analysis

{¶ 43} That states have the power to impose a tax on people, property, and activities within their borders is without question. *Shaffer v. Carter*, 252 U.S. 37, 51-52, 40 S.Ct. 221, 64 L.Ed. 445 (1920); *see also* Hamilton, The Federalist No. 33 at 205 (Clinton Rossiter Ed.1961) ("the individual states * * * retain an independent and uncontrollable authority to raise revenue to any extent of which they may stand in need, by every kind of taxation, except duties on imports and

exports"). Pursuant to Article XVIII of the Ohio Constitution, Ohio's municipalities also have the power to levy taxes. *Thompson v. Cincinnati*, 2 Ohio St.2d 292, 294, 208 N.E.2d 747 (1965).

{¶ 44} The Due Process Clause of the Fourteenth Amendment to the United States Constitution, nonetheless, places an important limit on the otherwise broad power to tax by imposing several prerequisites that must be met before the state or one of its municipalities may levy a tax. *Hillenmeyer v. Cleveland Bd. of Rev.,* 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164, ¶ 40. Among the prerequisites is the requirement that there exist a " 'minimum connection, between a state and the person, property or transaction it seeks to tax.' " *Id.*, quoting *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-345, 74 S.Ct. 535, 98 L.Ed. 744 (1954).

{¶ 45} The sufficiency of this connection is determined by applying the test announced in *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and asking whether the imposition of the tax would " 'offend "traditional notions of fair play and substantial justice." ' " *Quill Corp. v. North Dakota*, 504 U.S. 298, 306-307, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), *overruled on other grounds*, *South Dakota v. Wayfair, Inc.*, 585 U.S. __, __, 138 S.Ct. 2080, 2092-2093, 201 L.Ed.2d 403 (2018), quoting *Internatl. Shoe* at 316, quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). In this case, that means asking whether the person or thing subject to the municipal tax, enjoys the benefits and protection of the laws of the municipality. It is on this point—the sufficiency of the connection—that I respectfully disagree with the majority opinion.

{¶ 46} The majority opinion concludes that Cleveland's taxation of Willacy was constitutional because "the income came from work she performed in Cleveland" and "thus satisfies the minimum-connection requirement." Majority opinion at ¶ 27.

{¶ 47} The problem I see here is the gap in time between when Sherwin-Williams awarded Willacy the options as compensation and when Cleveland chose to impose its tax. After all, as our sister court in Connecticut once observed, "it is implicit in the due process test that the benefits afforded by the state * * * must generally span the time period during which the income was earned, and not solely antedate that time period without any continuing effect." *Chase Manhattan Bank v. Gavin*, 249 Conn. 172, 202-203, 733 A.2d 782 (Conn.1999).

{¶ 48} Several cases from the United States Supreme Court and this court support the idea that, for a minimum connection to exist, the imposition of the tax must occur as close in time as possible to the nonresident-taxpayer's use and enjoyment of the benefits and protections afforded by the municipality.

{¶ 49} In *Shaffer*, the United States Supreme Court stated that "[i]ncome taxes are a recognized method of distributing the burdens of government, favored because [they require] contributions from those who realize *current pecuniary benefits* under the protection of the government * * *." (Emphasis added.) *Id.*, 252 U.S. at 51, 40 S.Ct. 221, 64 L.Ed. 445. The word "current" clearly does not apply in this case.

{¶ 50} Likewise, in *Internatl. Harvester Co. v. Wisconsin Dept. of Taxation*, 322 U.S. 435, 64 S.Ct. 1060, 88 L.Ed. 1373 (1944), Justice Jackson—the author of the United States Supreme Court's opinion in *Miller Bros.*, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744, which guides this court's analysis—specifically objected to a state taxing a nonresident stockholder's dividend "merely because *some time in the past* a portion of the surplus [from which the dividend was paid] was earned in the state." (Emphasis added.) *Internatl. Harvester*, 322 U.S. at 445-451, 64 S.Ct. 1060, 88 L.Ed. 1373 (Jackson, J., dissenting).

{¶ 51} Finally, even in *Hillenmeyer*, in which this court concluded that a municipality may constitutionally tax a nonresident's compensation for services performed within that locale, *id.*, 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d

1164, at ¶ 43, the taxes at issue were imposed *in the same tax years* in which the taxpayer actually performed the services for which he was compensated, *id.* at ¶ 1.

{¶ 52} Thus, while "[t]he simple but controlling question is whether the state has given anything for which it can ask return," *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 444, 61 S.Ct. 246, 85 L.Ed. 267 (1940), due process necessarily implies that there is a temporal limit on when the state (or the municipality) can make that request and impose a tax on a nonresident and his or her income.

{¶ 53} Contrary to appellees' assertion, the fact that Cleveland's decision on the timing of the tax is consistent with the United States Supreme Court's decisions in *Commr. of Internal Revenue v. Smith*, 324 U.S. 177, 182, 65 S.Ct. 591, 89 L.Ed. 830 (1945), and *Commr. of Internal Revenue v. LoBue*, 351 U.S. 243, 248-250, 76 S.Ct. 800, 100 L.Ed. 1142 (1956), is of no consequence. The same is true of the decision of the First District Court of Appeals in *Rice v. Montgomery*, 104 Ohio App.3d 776, 663 N.E.2d 389 (1st Dist.1995).

{¶ 54} Neither *Smith* nor *LoBue* addressed the timing of the tax under the Due Process Clause in holding that it was proper for the government to tax the difference in value between the option price and the share price at the time the options were exercised. This makes sense since the issue in those cases was the imposition of the *federal* income tax and jurisdiction was a given because the federal government's jurisdiction is nationwide. In this case, however, the jurisdiction of the municipality was not a given, so the timing of the tax necessarily matters for due-process purposes.

{¶ 55} *Rice* is also distinguishable from the present case based on the simple fact that the taxpayers in that case were residents of the municipality that imposed the tax at the time they exercised their options. *Rice* at 778-779.

{¶ 56} Consequently, without running afoul of the Due Process Clause, *Smith*, *LoBue*, and *Rice* cannot form the basis for upholding the imposition of such

a tax on a nonresident. *But see Allen v. Commr. of Revenue Servs.*, 324 Conn. 292, 152 A.3d 488 (2016).

{¶ 57} In this case, there was clearly a connection between the city and the compensation in 2007, the year the options were granted. At that time, Willacy worked in the city and enjoyed the benefits and protections afforded by the municipality while she did so. Cleveland, however, *chose not to impose its tax then*. Instead, it waited until Willacy exercised her options.

{¶ 58} While Cleveland's decision to wait to impose the tax may have made sense given the city ordinances, it does not make sense from a constitutional perspective. By 2014 and 2015, the two tax years in question, Willacy had long since retired and moved to a different state. In those years, Willacy therefore enjoyed neither the benefits nor the protection afforded by Cleveland and its laws. Additionally, any relationship between the benefits the city conferred and the increase in the value of the stock in those intervening five years is speculative at best.

{¶ 59} Given this gap in time and Willacy's status as a nonresident, I find it very difficult to say that a minimum connection between Willacy, the income, and the city existed such that the requirements imposed by the Due Process Clause were satisfied here. Any way you slice it, such extraterritorial taxation is surely inconsistent with " '*traditional notions* of fair play and substantial justice,' " (emphasis added) *Internatl. Shoe*, 326 U.S. at 316, 66 S.Ct. 154, 90 L.Ed. 95, quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). *See Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877), *overruled in part*, *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (a state has personal jurisdiction over a nonresident when that person is physically present in that state) and *Rose v. Himely*, 8 U.S. 241, 277, 2 L.Ed. 608 (1808), *overruled in part, Hudson v. Guestier*, 10 U.S. 281, 3 L.Ed. 224 (1810) ("It is repugnant to every idea of a proceeding *in rem*, to act against a thing which is not in the power of the sovereign

under whose authority the court proceeds"); *see also* Declaration of Independence, July 4, 1776 ("Governments are instituted among Men, deriving their just powers from the consent of the governed").

### III. Conclusion

{¶ 60} Because the Due Process Clause requires a minimum connection between a government and the people, property, and transactions it seeks to tax, I would hold that an Ohio municipality cannot reach back in time and across state lines to tax the income of a nonresident. To hold otherwise, in my opinion, sanctions the "seizure of property * * * under pretext of taxation where there is no jurisdiction or power to tax" and permits "a denial of due process of law." *Miller Bros.*, 347 U.S. at 342, 74 S.Ct. 535, 98 L.Ed. 744.

{¶ 61} Therefore, I respectfully dissent.

_____

Aubrey B. Willacy; and Buckingham, Doolittle & Burroughs, L.L.C., and Steven A. Dimengo, for appellant.

Barbara A. Langhenry, Cleveland Director of Law, and Linda L. Bickerstaff, Assistant Director of Law, for appellees

_____