[Cite as *Buckeye Inst. v. Kilgore*, 2021-Ohio-4196.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The Buckeye Institute et al., | : | |
| Plaintiffs-Appellants, | : | No. 21AP-193 |
| | | (C.P.C. No. 20CV-4301) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Megan Kilgore et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on November 30, 2021

**On brief:** *Wegman Hessler* and *Jay R. Carson*, and *Robert Alt*, for appellants The Buckeye Institute, Greg R. Lawson, Rea S. Hederman, and Joe Nichols. **Argued:** *Jay R. Carson.*

**On brief:** *Ice Miller LLP* and *Diane M. Menache* and *Daniel M. Anderson*, for appellee Megan Kilgore, Columbus City Auditor, and *Allison D. Daniel* and *Julie M. Pfieffer*, for appellee Attorney General, Dave Yost.
**Argued:** *Diane M. Menache.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiffs-appellants, The Buckeye Institute, Greg R. Lawson, Rea S. Hederman, and Joe Nichols, appeal from a judgment of the Franklin County Court of Common Pleas dismissing appellants' complaint for declaratory and injunctive relief concerning Section 29 of Ohio House Bill 197 ("H.B. 197"), an emergency, temporary tax measure enacted by the 133rd Ohio General Assembly in response to the COVID-19 pandemic. Because the General Assembly acted within its authority in enacting Section 29 of H.B. 197 and Section 29 is not "clearly incompatible" with due process clause tax

limitations, the trial court did not err in dismissing appellants' action seeking a declaration that Section 29 of H.B. 197 is unconstitutional and void.  We affirm the judgment of the Franklin County Court of Common Pleas.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  On March 9, 2020, in response to the public health threat posed to Ohio residents by the COVID-19 virus, Ohio Governor Mike DeWine declared a state of emergency and authorized the Ohio Department of Health to issue "guidelines for private businesses regarding appropriate work and travel restrictions, if necessary[.]"  (Compl. at ¶ 32, citing March 9, 2020 Executive Order 2020-01D at 3.)  A little over a week later, the Director of Health issued an order that required, subject to certain exceptions, "all individuals currently living within the State of Ohio * * * to stay at home or at their place of residence[.]"  (Compl. at ¶ 33, citing March 22, 2020 ODH Stay at Home Order at ¶ 1.)  The Stay at Home Order allowed nonessential businesses to continue operating to the extent that the continued operation consisted "exclusively of employees or contractors performing activities at their own residences (i.e., working from home)."  (Compl. at ¶ 34, citing Stay at Home Order at ¶ 2.)

{¶ 3}  On March 27, 2020, the governor signed into law H.B. 197, an act enacted by the General Assembly aimed at addressing various aspects of the public health crisis. Relevant to this appeal, Section 29 of H.B. 197 provided:

> [D]uring the period of the emergency declared by Executive Order 2020-01D, issued on March 9, 2020, and for thirty days after the conclusion of that period, any day on which an employee performs personal services at a location, including the employee's home, to which the employee is required to report for employment duties because of the declaration shall be deemed to be a day performing personal services at the employee's principal place of work.

(Compl. at ¶ 41, citing Section 29 of H.B. 197.)

{¶ 4}  On July 2, 2020, appellants filed a complaint against appellees Columbus City Auditor Megan Kilgore and Ohio Attorney General Dave Yost challenging the validity of Section 29 of H.B. 197. Appellants explained that the Buckeye Institute's office is located in downtown Columbus, but the "bulk of work performed * * * is not tied to any physical location and can be conducted remotely[,]" and that it "uses a cloud-based computing

system for all of its email and document sharing needs." (Compl. at ¶ 13.) To comply with the Stay at Home Order, appellants Hederman, Nichols, and Lawson began working from their Westerville, Powell, and Newark Township homes on March 18, 2020 (*Id.* at ¶ 35.); they conducted their work "through a personal computer with a home internet connection." (*Id.* at ¶ 15, 17, 19.) Hederman and Nichols returned to work at the Columbus office on June 7, 2020 while appellant Lawson "continues to work from home, and anticipates that he will do so for the foreseeable future." (*Id.* at ¶ 37-38.)

{¶ 5} Consistent with Section 29 of H.B. 197, the Buckeye Institute "continued its withholding from [Hederman, Nichols, and Lawson's] paychecks for payment of municipal income taxes to the City of Columbus" during the period when those employees worked exclusively from their homes. (*Id.* at ¶ 42.) Because the municipal income taxes in the cities or townships they reside in are lower than the 2 1/2% income tax rate imposed by the City of Columbus, appellants assert in their complaint that they were "subject[ed] * * * to higher municipal income taxes" and that "municipalities in which they actually performed the work" were "deprived of tax revenues." (*Id.* at ¶ 7.)

{¶ 6} As to why Section 29 should be deemed invalid, appellants asserted two theories: (1) the City's "taxing of nonresidents on income earned outside of the City of Columbus"—its "exercise in extraterritorial jurisdiction"—is unconstitutional under the due process clause of the U.S. Constitution; and (2) "[t]he Ohio Constitution does not authorize the General Assembly to expand the taxing power of municipalities beyond established limits." (*Id.* at ¶ 5, 50, 53.) Therefore, appellants sought, pursuant to R.C. 2721.03, a declaration that "Sec. 29 of [H.B.] 197, and all actions taken by the City of Columbus in reliance upon it to be unconstitutional and therefore void." (*Id.*, Count One at ¶ 55 and Prayer for Relief at 15.) The appellants also asked the trial court to "enjoin[] the collection of municipal income taxes from nonresidents on income earned outside of the City of Columbus and a refund of all withholding or payments already collected on such income." (*Id.*, Count Two at ¶ 57-62 and Prayer for Relief at 15.)

{¶ 7} Appellees moved to dismiss appellants' claims with prejudice for failure to state a claim upon which relief can be granted pursuant to Civ. R. 12(B)(6). The City argued that the General Assembly had the power to "manage the interplay among different municipalities imposing tax" and had done so prior to H.B. 197, that the federal due process

clause does not limit the ability of a state to determine intrastate tax policy over its residents, and that federal due process does not require physical presence to be satisfied so long as a "minimal connection" exists.  (Appellant Kilgore's Mot. to Dismiss at 5, 11.)

{¶ 8}   Appellants opposed the motions to dismiss arguing that under *Hillenmeyer v. Cleveland Bd. or Rev.*, 144 Ohio St.3d 165, 2015-Ohio-1623 and *Willacy v. Cleveland Bd. of Income Tax Rev.*, 159 Ohio St.3d 383, 2020-Ohio-314, the due process clause prohibits "extraterritorial" municipal taxation—in other words municipalities are prohibited from taxing "the income of nonresidents for work performed outside of the [municipality]" (Sept. 9, 2020 Brief in Opp. to [Appellant Kilgore's] Mot. to Dismiss at 1, 7; Sept. 30, 2020 Memo. in Opp. to [Appellant Yost] Mot. to Dismiss at 4.)

{¶ 9}   The trial court granted appellees' motion to dismiss.  In its discussion of the case, the trial court first noted that the Ohio General Assembly "has temporally and geographically regulated municipal taxes as part of a statewide coordinated framework even before the exigent circumstances of the COVID-19 pandemic" and cited to the "20-day rule" codified in R.C. 718.011 as an example. (Trial Court Decision at 5.) The trial court then discussed the "presumption of constitutionally" and "legislative regularity" enjoyed by the General Assembly in enacting legislation and its "broad powers of intrastate taxation." (*Id.* at 6.)

{¶ 10}   "Against this backdrop," the trial court found appellants' cited cases—*Hillenmeyer* and *Willacy*—inapposite to the case presented.  (*Id.* at 7.)  Specifically, the trial court found "[n]either *Hillenmeyer* nor *Willacy* address the Ohio General Assembly's longstanding power to tax Ohio residents wholly within Ohio's borders, or to set appropriate coordinating limitations between Ohio municipalities for an efficient, organized and coordinated intrastate taxing schema." (*Id.* at 8.)  Instead, the trial court emphasized that:

> [h]ere, the municipal tax is an annual tax based on the principle place of employment as declared at the beginning of the year. Regardless of where Plaintiffs perform their work, the income they receive comes from the fact that the work they perform benefits their employer who is located in Columbus. The Court finds the General Assembly enjoys the authority to establish municipal income allocation rules among Ohio taxing authorities in order to efficiently and uniformly coordinate intrastate taxation of Ohio residents. As a general principle,

> Ohio courts have interpreted the Ohio Constitution to allow the General Assembly to regulate municipal taxation where necessary to police taxation among municipalities. *Cincinnati Imaging Venture v. City of Cincinnati*, 116 Ohio App.3d 1, 2, 686 N.E.2d 528 (1st Dist.l996). The Home Rule Amendment to the Ohio Constitution provides the power to impose municipal taxes, expressly subject to the limits and the control of the General Assembly. See Oh. Const. Art. XVIII, § 13; *Cincinnati Imaging Venture*, supra.

(Trial Court Decision at 8.)

The trial court was unpersuaded by appellants' position that Section 29 impermissibly expands municipal taxing authority, but instead found "Section 29 * * * is an express limitation on municipal latitude in taxation; providing uniform rules regulating the circumstances in which municipalities can and cannot tax" in line with the recent Supreme Court of Ohio reasoning in *Athens v. McClain*, 163 Ohio St.3d 61, 2020-Ohio-5146. (Trial Court Decision at 9.) Therefore, the trial court concluded that the General Assembly acted within its authority by enacting Section 29 of H.B. 197, "thereby legislatively limiting, coordinating and regulating municipal taxing authorities in their respective treatment of employees working remotely under the exigent circumstance of the COVID-19 pandemic." (*Id.* at 9.)

{¶ 11} Appellants filed a timely notice of appeal.

## II. ASSIGNMENT OF ERROR

{¶ 12} Appellants submit three assignments of error for our review:

> ASSIGNMENT OF ERROR NO. 1: The trial court erred by failing to apply the well-established due process requirements governing nonresident municipal income tax first set forth by the Ohio Supreme Court in *Angell v. Toledo*, 153 Ohio St. 179, 191 N.E.2d 250 (1950) and most recently articulated in *Hillenmeyer v. Cleveland Bd. of Rev.* (2015), 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164 (2015) and *Willacy v. Cleveland Bd. of Income Tax Rev.* (2020), 159 Ohio St. 3d 383, 2020-Ohio-314, 151 N.E.3d 561.

> ASSIGNMENT OF ERROR NO. 2: The trial court erred in relying on Ohio's Twenty Day Rule, codified at R.C. 718.011, to find that Ohio law recognizes the legislature's authority to allow municipalities to engage in extraterritorial taxation.

> ASSIGNMENT OF ERROR NO. 3: The trial court erred by holding that Sec. 29 of H.B. 197 was a limitation on municipal taxing power and thus authorized under the Ohio Constitution.

## III.     STANDARD OF REVIEW

{¶ 13} "A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint." *Volbers-Klarich v. Middletown Mgt.*, 125 Ohio St.3d 494, 2010-Ohio-2057, ¶ 11. "In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, we accept as true all factual allegations in the complaint." *Lunsford v. Sterilite of Ohio, L.L.C.*, 162 Ohio St.3d 231, 2020-Ohio-4193, ¶ 22, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). "A complaint should not be dismissed unless it appears 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.' " *Lunsford*, quoting *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, (1975), syllabus.

{¶ 14} An appellate court generally reviews a judgment granting a Civ.R. 12(B)(6) motion to dismiss de novo. *T & M Machines, LLC v. Yost*, 10th Dist. No. 19AP-124, 2020-Ohio-551, ¶ 11; *Menorah Park Ctr. for Senior Living v. Rolston*, 164 Ohio St.3d 400, 2020-Ohio-6658, ¶ 12. Questions of law raised in a declaratory judgment action are likewise reviewed de novo on appeal. *One Energy Ents., LLC v. Ohio DOT*, 10th Dist. No. 17AP-829, 2019-Ohio-359, ¶ 27-28, quoting *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 13 (" 'once a trial court determines that a matter is appropriate for declaratory judgment, its holdings regarding questions of law are reviewed on a de novo basis.' ")

## IV.     ANALYSIS

{¶ 15} Appellants bring an action for declaratory judgment under R.C. 2721.03, which states in relevant part: "any person whose rights, status, or other legal relations are affected by a constitutional provision, [or] statute, * * * may have determined any question of construction or validity arising under the * * * constitutional provision, [or] statute * * * and obtain a declaration of rights, status, or other legal relations under it." "A declaratory judgment action is a civil action and provides a remedy in addition to other legal and equitable remedies available." *T & M Machines* at ¶ 15, citing *Victory Academy of Toledo v. Zelman*, 10th Dist. No. 07AP-1067, 2008-Ohio-3561, ¶ 8, citing *Aust v. Ohio State Dental Bd.*, 136 Ohio App.3d 677, 681 (10th Dist.2000). "The essential elements for declaratory relief are: (1) a real controversy exists between the parties, (2) the controversy is justiciable

in character, and (3) speedy relief is necessary to preserve the rights of the parties." *T & M Machines* at ¶ 16, citing *Aust* at 681.

{¶ 16} The parties do not dispute that a real controversy exists between them and the controversy is justiciable in character. Instead, the parties address the merits of the trial court's determination that the General Assembly acted within its state constitutional authority to enact Section 29 of H.B. 197 and that the law does not violate due process limits on jurisdiction to tax. Following independent review of the issues before us, we conclude appellants' assignments of error lack merit and dismissal of the declaratory action is warranted.

### A. Judicial review of legislative enactments excludes policy and presumes validity

{¶ 17} We note initially that judicial review of a legislative enactment does not include judgment on policy. "The Constitutional Convention did not vest the courts with power over questions of legislative policy." *State ex rel. Durbin v. Smith*, 102 Ohio St. 591, 595 (1921). *See Bd. of Trustees of the Tobacco Use Prevention & Control Found. v. Boyce*, 127 Ohio St.3d 511, 2010-Ohio-6207, ¶ 30 ("It is not for us to judge the wisdom of the General Assembly but to determine whether the exercise of its power comports with or violates the Ohio Constitution.")

{¶ 18} Furthermore, statutes have a strong presumption of constitutionality; "before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, (1955), paragraph one of the syllabus. *See also* R.C. 1.47(A) ("In enacting a statute, it is presumed that * * * [c]ompliance with the constitutions of the state and of the United States is intended"; *Libertarian Party of Ohio v. Husted*, 10th Dist. No. 16AP-496, 2017-Ohio-7737, ¶ 31 (2016) (noting the state Constitution is primarily a *limitation* on legislative power of the General Assembly rather than a grant of power, and therefore the General Assembly may pass any law unless it is specifically prohibited by the state or federal Constitutions.) In determining whether a state tax law comports with rights secured by the federal constitution, "every presumption" in favor of upholding the state tax law "is indulged, and only clear and demonstrated usurpation of power will authorize judicial interference with legislative action." *Green v. Frazier*, 253 U.S. 233, 239 (1920).

**B. The trial court did not err in finding the General Assembly had authority to enact Section 29 of H.B. 197 under the Ohio Constitution**

{¶ 19} For clarity of discussion, we will address the assignments of error out of order. In their third assignment of error, appellants contend the trial court erred by holding Section 29 of H.B. 197 was a limitation on municipal taxing power and thus authorized under the Ohio Constitution. Appellants argue that in enacting Section 29 of H.B. 197, the General Assembly impermissibly expanded, rather than limited, municipalities imposition of taxes to nonresidents working outside of its borders. We disagree.

{¶ 20} Viewed at a high level, a state "has sovereign power unembarrassed by any restriction except those that emerge from the [Federal] Constitution" in enacting legislation concerning taxation of residents within its borders. *Greenough v. Tax Assessors of Newport*, 331 U.S. 486, 490 (1947). The sovereign power of the state extends to the "mode, form, and extent" of taxation of residents within the state's jurisdiction as well as to how "to structure [the state] tax system[.]" *N. Carolina Dept. of Revenue v. Kimberley Rice Kaestner 1992 Family Trust*, ___U.S.___, 139 S.Ct. 2213, 2226 (2019) ("States have broad discretion to structure their tax systems"); *Shaffer v. Carter*, 252 U.S. 37, 51-52 (1920) ("The rights of the several States to exercise the widest liberty with respect to the imposition of internal taxes always has been recognized in the decisions of this court. * * * the State has, speaking generally, the freedom of a sovereign both as to objects and methods. * * * Unless restrained by provisions of the Federal Constitution, the power of the State as to the mode, form, and extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction[.]")

{¶ 21} As explained by the Supreme Court of Ohio, under the Ohio Constitution, "the General Assembly may pass legislation that 'limits' or 'restricts' the power of municipalities to tax." *City of Athens v. McClain*, 163 Ohio St.3d 61, 2020-Ohio-5146, ¶ 20-23, citing Article XVIII, Section 3 of the Ohio Constitution (providing that "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws"); Article XVIII, Section 13 of the Ohio Constitution (conferring on the General Assembly the authority to pass laws to "limit the power of municipalities to levy taxes and incur debts for local purposes"); and Article XVIII, Section 6 of the Ohio Constitution (providing that the General Assembly has the authority to "restrict

[municipalities'] power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power.").

{¶ 22} As examples of the General Assembly's exercise of its power to limit municipal income taxation, the *Athens* court listed the enactment of R.C. Chapter 718, which "mandated a uniform tax rate, required municipalities to get voter approval before they could impose a higher rate, and immunized certain income from municipal taxation"; later expansions of R.C. Chapter 718 "to make municipal taxation more uniform, with the goal of making it easier for taxpayers to comply"; and enactment of 2014 Sub.H.B. No. 5, "which established greater statewide uniformity of municipal income taxes by explicitly preempting municipalities from imposing an income tax unless they adopted, by ordinance or resolution, the provisions of R.C. Chapter 718 and levied the tax in accordance with those provisions, R.C. 715.013 and 718.04(A)." *Id.* at ¶ 4-6.

{¶ 23} Specific to the enactment at issue in that case, the *Athens* court concluded, "the General Assembly's power to *limit* the levy of municipal taxes includes the power to limit administration of a validly enacted tax" and also includes the power to impose centralized administration of municipal taxes. (Emphasis added.) *Athens* at ¶ 45-49. In its analysis, the court differentiated a case that predated enactments giving preemptive effect to R.C. Chapter 718:

> The enactment of H.B. 5 and H.B. 49 converted the affirmative requirements of R.C. Chapter 718 into adjuncts of the broader preemption of municipal income taxes. After H.B. 5, a municipality that is able to enforce its ordinance at all has incorporated the prescribed provisions of state law. And once R.C. Chapter 718 has been explicitly incorporated into a municipality's tax code, any other provision of the municipality's ordinance at odds with it would be an internal conflict within municipal law.

*Id.* at ¶ 49.

The *Athens* court concluded: "the General Assembly's authority to limit the power of municipalities to tax allows it to broadly preempt municipal income taxes and to require that such taxes be imposed in strict accordance with the terms dictated by legislation passed by the General Assembly." *Id.* at ¶ 51. "[B]ecause Article XVIII Section 13 permits the General Assembly to limit the municipalities' power to levy taxes, the General Assembly can

require municipalities to enact legislation that accomplishes this aim." *Id.*, citing *City of Athens v. Testa*, 10th Dist. No. 18AP-144, 2019-Ohio-277, ¶ 51.

{¶ 24} In this case, the trial court found that Section 29 of H.B. 197 was a proper exercise of the General Assembly's power to limit the levy of municipal taxes under Article XVIII, Section 13 of the Ohio Constitution. Section 29 of H.B. 197 states:

> [n]otwithstanding [R.C. 718.011], and for the purposes of Chapter 718. of the Revised Code, during the period of the emergency * * *, any day on which an employee performs personal services at a location, including the employee's home, to which the employee is required to report for employment duties because of the declaration shall be deemed to be a day performing personal services at the employee's principal place of work.

(Section 29 of H.B. 197.)

In other words, Section 29 of H.B. 197 temporarily treats, for purposes of the municipal tax code, work performed at home, or other locations the employee is required to report for employment duties due to the pandemic, as a day at the employee's "principal place of work."[1]

{¶ 25} Appellants argue, essentially, that municipalities have no ability to impose income tax on nonresidents for work performed outside of its borders, and the General Assembly cannot give municipalities that ability through legislation. The First District Court of Appeals recently rejected this argument in *Time Warner Cable, Inc. v. City of Cincinnati*, 1st Dist. C-190375, 2020-Ohio-4207.

{¶ 26} In *Time Warner Cable*, a company sought to file a consolidated tax return in the City of Cincinnati, and the City objected on the basis that the affiliate group could only encompass entities "actually doing business in Cincinnati." *Id.* at ¶ 3. The parties debated whether a city ordinance or a (former) state statute would control. The BTA sided with the

---

[1] R.C. 718.011(A)(7) defines "principal place of work," as "the fixed location to which an employee is required to report for employment duties on a regular and ordinary basis," or, if inapplicable, "the worksite location in this state to which the employee is required to report for employment duties on a regular and ordinary basis," or, if inapplicable, "the location in this state at which the employee spends the greatest number of days in a calendar year performing services for or on behalf of the employee's employer." R.C. 718.011(A). The location where an employee spends a day is further defined and includes accommodations, for example, for partial days (allotted to the municipality where the employee performed services for more time) and for travel time (considered to be time spent at the principal place of business). Employers generally have a duty to withhold municipal income tax on qualifying wages paid to an employee, unless (subject to some exceptions) the employee performed twenty or fewer days of such services in the municipal corporation. R.C. 718.03 and 718.011(B).

company, and the City appealed. The First District court reviewed municipal tax power under the Home Rule Amendment and the General Assembly's authority to limit that power. It concluded the General Assembly took "clear and affirmative measures to limit the City's authority to impose the income tax in the manner it sought[,]" and, citing to *Athens*, found the General Assembly's exercise of authority was appropriate. *Id.* at ¶ 14. The court then rejected the City's contention that the statute unlawfully forces it to exercise extraterritorial power by taxing beyond its borders, holding instead, "a municipality may act extraterritorially where granted such authority by statute." *Id.* at ¶ 17, citing *Springfield v. All Am. Food Specialists, Inc.*, 85 Ohio App.3d 464, 469, (2d Dist.1993), *Prudential Co-op. Realty Co. v. City of Youngstown*, 118 Ohio St. 204, 211-212, 6 Ohio Law Abs. 175 (1928); *Tatco Dev., Ltd. v. City of Oakwood*, 2d Dist. No. 18387 (Jan. 12, 2001).

{¶ 27} In addition to this persuasive authority, the nature of the law at issue here raises novel issues of the General Assembly's authority to temporarily structure municipal income tax to mitigate the economic impact of a health crisis on the state. As stated by the trial court, "the exigent circumstance of the COVID-19 pandemic" gave rise to Section 29 of H.B. 197. (Trial Court Decision at 9.) Specifically, the General Assembly "declared [H.B. 197] to be an emergency measure necessary for the immediate preservation of the public peace, health, and safety" in order "to continue essential operation of various facets of state government, maintain the continuity of the state tax code, and respond to the declared pandemic and global health emergency related to COVID-19." (H.B. 197 of the 133rd General Assembly, Sec. 40.)

{¶ 28} Article II, Section 1d of the Ohio Constitution, provides that the General Assembly may pass "emergency laws necessary for the immediate preservation of the public peace, health or safety" and such laws "shall go into immediate effect * * * [and] not be subject to the referendum"). "The manner and form in which this particular provision of the constitution was adopted make it clear that the question of preservation of the public peace, health or safety, together with the reasons for the necessity of passing such emergency law, were confided to the legislative discretion." *State ex rel. Durbin v. Smith*, 102 Ohio St. 591, 597 (1921). *See also Am. Fin. Servs. Assn. v. City of Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, ¶ 30, citing *State ex rel. Hackley v. Edmonds*, 150 Ohio St. 203, 212 (1948) ("As we explained more than 50 years ago, the Home Rule Amendment

was designed to give the 'broadest possible powers of self-government in connection with all matters which are *strictly* local,' but the framers of the amendment did not want to 'impinge upon matters which are of a state-wide nature or interest.' ")  Thus, while "with respect to municipal taxation, immunity from state law is the rule" subject only to the General Assembly's authority to limit or restrict the municipality's power to tax, this case also involves the General Assembly's authority to legislate in response to a state-wide emergency for the general welfare of all Ohio citizens.  *City of Athens* at ¶ 23.

{¶ 29}  Having reviewed the law at issue against the state constitutional authority concerns raised by appellant, we do not find Section 29 of H.B. 197 is "clearly incompatible" with the General Assembly's authority to pass laws to limit the power of municipalities to levy taxes and to address the COVID-19 pandemic.  *Dickman*.  *See also State ex rel. Jackman v. Court of Common Pleas*, 9 Ohio St.2d 159, 162 (1967) ("The legislative power of the state is vested in the General Assembly, and whatever limitation is placed upon the exercise of that plenary grant of power must be found in clear prohibition by the Constitution.")

{¶ 30}  Therefore, for all the reasons above, we find appellants' position that the General Assembly lacked authority under the Ohio Constitution to enact Section 29 of H.B. 197 lacks merit.

{¶ 31}  Accordingly, we overrule appellants' third assignment of error.

## C. The trial court did not err in rejecting appellants' arguments based on *Angell*, *Hillenmeyer*, and *Willacy*

{¶ 32}  Appellants contend the General Assembly's power to enact Section 29 of H.B. 197 is immaterial if the acts of the General Assembly fail to comport with due process. Appellants argue that the due process clause of the U.S. Constitution allows a municipality to tax the income of nonresidents only where there is a "fiscal connection between the income and the work conducted by the taxpayer in the municipal jurisdiction," and that the Supreme Court of Ohio, as expressed in *Angell*, 153 Ohio St. 179, *Hillenmeyer*, 2015-Ohio-1623, and *Willacy*, 2020-Ohio-314, interprets this requirement to mean "local taxation of a nonresident's compensation for services must be based on the location of the taxpayer when the services were performed."  (Appellants' Brief at 1, quoting *Hillenmeyer* at ¶ 42.) Therefore, appellants contend the trial court erred by "failing to apply the well-established due process requirements governing nonresident municipal income tax" set forth by the

Ohio Supreme Court. (Appellants' Brief at v.) For the following reasons, appellants' assignment of error lacks merit.

{¶ 33} Initially, we note that *Angell*, *Hillenmeyer*, and *Willacy* all concern the question of whether City tax laws violate due process. In other words, none of those cases answer the direct question brought here: whether an emergency measure enacted by the General Assembly violates due process clause limitations on tax. *Angell*, *Hillenmeyer*, and *Willacy* are not directly on point, and the assignment of error as stated lacks merit for this reason alone. *Huntington Nat'l Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21, citing App.R. 12(A)(1)(b) (stating that "a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs") and *Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 28 (holding that appellate courts "rule[ ] on assignments of error only, and will not address mere arguments.").

{¶ 34} Furthermore, because circumstances exist under which the act would be valid, appellants' facial challenge to Section 29 fails. We note that although appellants provide some information about the individual plaintiffs in their complaint—they worked (or work) from home outside of the City of Columbus where their employer is based and use a "cloud-based" computing system, for example—appellants seek a declaration that Section 29 of H.B. 197 "and all actions taken by the City of Columbus in reliance upon it [is] * * * unconstitutional and therefore void." (Compl. at ¶ 13, 56.) In their memorandum in opposition to appellees' motion to dismiss, appellants did not argue that the individual plaintiffs' particular working circumstances, and lack of contacts with the City of Columbus, demonstrated that Section 29 violated due process as applied to them, but rather argued due process requires local taxation based on the physical location of the taxpayer when the services were performed without exception. (Memo. in Opp. to [Appellant Kilgore's] Mot. to Dismiss at 1-15; Brief in Opp. to [Appellant Yost] Mot. to Dismiss at 1-5.) Likewise, appellants in their appellate brief base this assignment of error on the black-and-white premise that the Supreme Court of Ohio has determined, under principles of due process, that municipal taxation of nonresidents' income can only be based on the physical location of the taxpayer when the services were performed. (Appellant's Brief at 8-23.) Appellants confirmed at oral argument that they assert only a facial challenge to Section 29 of H.B. 197.

{¶ 35} "A party asserting a facial challenge to a statute must prove beyond a reasonable doubt 'that no set of circumstances exists under which the act would be valid.' " *Ohio Renal Assn. v. Kidney Dialysis Patient Protection Amendment Commt.*, 154 Ohio St.3d 86, 2018-Ohio-3220, ¶ 26, quoting *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, ¶ 21. *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) (internal quotation omitted) ("Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort.")

{¶ 36} Here, it is not difficult to identify circumstances where operation of Section 29 did not affect employees or employers at all:  even under the emergency declaration some employees, such as those in "Essential Businesses and Operations," continued to report to work at their normal place of employment or, perhaps, worked from home in the same municipality as their employer.  (Compl. at ¶ 33, citing Stay at Home Order at ¶ 1-2.) Because there are possible circumstances where Section 29 of H.B. 197 is valid, we reject the facial challenge.  *See Corrigan v. Testa*, 149 Ohio St.3d 18, 2016-Ohio-2805, ¶ 69 (rejecting facial challenge where "there is at least a possibility that the statute could be applied" in a way that is valid.).

{¶ 37} Finally, because appellants' due process arguments do not overcome the presumption of validity enjoyed by laws enacted by the General Assembly, we find the assigned error lacks merit.  Generally, "federal due process is satisfied if there is a rational relationship between a statute and its purpose." *Desenco, Inc. v. City of Akron*, 84 Ohio St.3d 535, 545 (1999) citing *Martinez v. California*, 444 U.S. 277, 283 (1980).

{¶ 38} Appellants do not dispute that there is a rational relationship between Section 29 of R.C. 149 and its purpose, but essentially assert that the due process clause completely prohibits a municipality from taxing an employee working beyond its borders and Section 29 violates that prohibition.  Appellants cite to Ohio Supreme Court text (*Hillenmeyer* and *Willacy*) for this proposition.  However, an expanded review of both Ohio and federal tax law cases shows that due process is generally not suitable for a bright-line test, but instead employs a "flexible" standard focused on whether a taxpayer receives benefits and protections from the taxing government body.  *U.S. Supreme Court in N. Carolina Dept. of Revenue v. Kimberley Rice Kaestner 1992 Family Trust*, ____U.S.____, 139 S.Ct. 2213, 2220 (2019), quoting *International Shoe* at 319

{¶ 39} The "boundary" between taxation and "merely unjustified 'confiscation' " "turns on the '[t]he simple but controlling question * * * whether the state has given anything for which it can ask return.' " *N. Carolina Dept. of Revenue* at 2220 quoting *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 444 (1940). "Ultimately, only those who derive 'benefits and protection' from associating with a State should have obligations to the State in question." *Id.* at 319. *See also Angell v. Toledo*, 153 Ohio St. 179, 185 (1950), citing *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435 (1940) ("[T]he test of whether a tax law violates the due process clause is whether it bears some fiscal relation to the protections, opportunities, and benefits given by the state, or, in other words, whether the state has given anything for which it can ask a return.")

{¶ 40} The cases primarily relied on by appellants, *Hillenmeyer* and *Willacy*, establish that in order for a municipality to have jurisdiction to tax a nonresident: (1) there must be a "definite link, some minimum connection, between a [municipality] and the person, property or transaction it [Ohio] seeks to tax"; and (2) "the income attributed to the [municipality] for tax purposes must be rationally related to 'values connected with the taxing municipality.' " *Hillenmeyer* at ¶ 40, citing *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 272-273 (1978) and *Quill Corp. v. North Dakota*, 504 U.S. 298, 306 (1992); *Willacy* at ¶ 22, citing *Miller Bros. Co. v. Maryland*, 347 U.S. 340 (1954) and *Moorman Mfg. Co.*

{¶ 41} Under the first prong, "[t]o determine whether a State has the requisite 'minimum connection' with the object of its tax," the U.S. Supreme Court "borrows from the familiar test of *International Shoe Co. v. Washington*, 326 U. S. 310 (1945)." *N. Carolina Dept. of Revenue* at 2220. Under this test, "[a] State has the power to impose a tax only when the taxed entity has 'certain minimum contacts' with the State such that the tax 'does not offend traditional notions of fair play and substantial justice.' " (Internal quotations omitted.) *Id.*, *International Shoe Co.* at 316. The first prong is established "when a state or locality imposes taxes on income arising from work performed within the jurisdiction." *Willacy* at ¶ 23, citing *Hillenmeyer* at ¶ 42. *See also Willacy* at ¶ 26, citing *Hillenmeyer* at ¶ 43 (clarifying that *Hillenmeyer*'s statement that "local taxation of a nonresident's compensation for services must be based on the location of the taxpayer when the services were performed" is relevant to concluding a taxpayer has a minimum connection with a taxing municipality under this first prong.)

{¶ 42} The second prong of the due-process test "requires a determination of the extent to which the nonresident's income 'is fairly attributable either to property located in the state or to events or transactions which, occurring there, are subject to state regulation and which are within the protection of the state and entitled to the numerous other benefits which it confers.' " *Willacy* at ¶ 24, citing *Internatl. Harvester Co. v. Wisconsin Dept. of Taxation*, 322 U.S. 435, 441-442 (1944). Under this prong, *Willacy* does cite to *Hillenmeyer* for the general proposition that "[nonbusiness] [c]ompensation must be allocated to the place where the employee performed the work." *Willacy* at ¶ 26 citing *Hillenmeyer* at ¶ 45. However, the test that *Willacy* sets forth is not so rigid: in cases in which the taxpayer has income from multiple jurisdictions, "the taxing jurisdiction can reach only the portion of the income *that is reasonably associated with activity in that jurisdiction*." (Emphasis added.) *Willacy* at ¶ 24, citing *Hillenmeyer* at ¶ 46.

{¶ 43} Neither *Willacy* nor *Hillenmeyer* (or any other authority cited by appellants) involved the issue of whether, from the perspective of due process limits on government taxation, remote work of an employee could be reasonably associated with the activity of an employer's office to support imposition of a municipal tax, particularly in the context of a public health crisis. Arguably, the reasoning stated by the *Angell* court to uphold a City municipal tax on a nonresident could still apply: "[t]he municipality certainly does afford protection against fire, theft, et cetera, to the place of business of plaintiff's employer and the operation thereof without which plaintiff's employer could not as readily run its business and employ help. In other words, the city * ** does afford to plaintiff not only a place to work but a place to work protected by the municipal government[.]" *Angell* at 185.

{¶ 44} Here, having independently reviewed the legislation and the due process concerns raised by appellants, we cannot say Section 29 of H.B. 197 clearly violates the limit the due process clause places on a municipality's jurisdiction to tax. *Desenco* at 538 (1999) ("In reviewing a statute, a court, if possible, will uphold its constitutionality. * * * All reasonable doubts as to the constitutionality of a statute must be resolved in its favor.") Therefore, for all of the reasons stated above, we find the trial court did not err in rejecting appellants' arguments based on *Angell*, *Hillenmeyer*, and *Willacy* and the associated tax-related due process considerations.

{¶ 45} Accordingly, appellants' first assignment of error is overruled.

**D. The trial court did not rely on the Twenty Day Rule in dismissing appellants' complaint**

{¶ 46} Appellants also contend that the trial court erred in relying on Ohio's "Twenty Day Rule," codified at R.C. 718.011, to find that Ohio law recognizes the legislature's authority to allow municipalities to engage in extraterritorial taxation. (Appellant's Brief at v.) Appellants define this issue as, "[c]an the 20-Day Rule establish the constitutionality of extraterritorial municipal taxation?" (Appellant's Brief at 1.)

{¶ 47} The premise of appellants' assigned error is unfounded. The trial court discussed the Twenty Day Rule "[i]nitially" and as a "note[] that Section 29 of HB 197 is not unprecedented." (Trial Court Decision at 5.) "Against this backdrop," which also included discussion about the presumption of constitutionality for Ohio's statutes and the General Assembly's broad power of intrastate taxation, the trial court then commenced its analysis of appellants' due process challenge. (Trial Court Decision at 7.) A court does not err by discussing the larger legislative scheme in considering the constitutionality of a statutory provision. *See e.g. Athens* at ¶ 52, fn 4 (noting statutes that imposed centralized administration of municipal taxes that had never been challenged in court). Moreover, the trial court in this case did not rely on the existence of the Twenty Day Rule to find the Section 29 constitutional. The trial court based its decision to grant the motion to dismiss on: *Hillenmeyer* and *Willacy* not controlling the outcome here; the nature of the annual municipal tax and the income benefitting their employer in Columbus; and the General Assembly's authority to establish municipal income allocation rules and limit municipal latitude in taxation.

{¶ 48} Accordingly, appellants' second assignment of error lacks merit.

## V. CONCLUSION

{¶ 49} Considering all of the above, we find appellants have not demonstrated that the Franklin County Court of Common Pleas erred in holding that the Ohio General Assembly acted within its state constitutional authority in enacting Section 29 of H.B. 197 or in rejecting appellants' constitutional due process clause challenge. We further disagree with appellants' premise that the trial court relied on the Twenty Day Rule, and, regardless, find such reliance would not require reversal since the trial court judgment was supported by alternative legal authority.

{¶ 50} Having overruled appellants' three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON and NELSON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____

NELSON, J., concurring in judgment.

{¶ 51} I join in the judgment of the court. I suppose I perhaps could imagine state or federal constitutional arguments against allowing Ohio's General Assembly to do what it (temporarily) did here, but I am not persuaded by the particular arguments that appellants have put forward.

{¶ 52} Indeed, a close reading of appellants' brief reveals that the *only* specific bar they cite to the state law at issue is the due process clause of the federal Constitution's Fourteenth Amendment (prohibiting States from depriving people of life, liberty, or property without due process of law), maybe joined with the related due process clause of the federal Constitution's Fifth Amendment. *See, e.g.*, Appellants' Brief at 10 ("this case turns" on a question involving "the due process limitations on taxing nonresidents' income arising from the U.S. Constitution's Fifth and Fourteenth Amendments"); 8 (relying on "the Ohio Supreme Court's long line of decisions applying the U.S. Constitution's Due Process Clause to municipal taxation"); 13 (urging, with capitalizations and bolding adjusted, that "state sovereignty must yield to the U.S. Constitution"); 23 (assessing cases including *Hillenmeyer* and *Willacy*, and concluding that "because the due process rights at issue flow from the Fifth and Fourteenth Amendments, no measure of State sovereignty can abrogate or curtail them"); 27 ("As with the State sovereignty argument, because acts of the General Assembly must still comport with due process, if *Angell*, *Hillenmeyer*, *Willacy*, et al. apply, then whether [the state law in question] expands or limits municipal taxes is immaterial"; noting, too, that Article XVIII, Section 13 of the Ohio Constitution gives the General Assembly power to limit municipal taxation, and pointing to no state constitutional provision that *precludes* what the legislature did). *Compare Angell* at 181 (while "an act of Congress is not valid unless the federal Constitution authorizes it * * * *, the General Assembly of Ohio may enact any law which is not prohibited by the Constitution").

{¶ 53} Appellants' argument, then, boils down to a contention that the federal due process clause controls whether the Ohio legislature can determine that Ohio employees may be taxed by the municipality that is a person's "principal place of work" rather than by the municipality in which he or she performs her work during the limited "period of

emergency."  I remain unconvinced (at least based on the reasons submitted) that the cited provisions of our federal charter control that level of state legislative detail.

{¶ 54}  As presented to us, appellants' argument hinges on authorities informed by principles involving taxation of interstate businesses and citizens of different states:  it seems to me to depend on drawing a virtually exact analogy between the federal system as involving the separate states that formed and make up the union, on the one hand, and a state governmental structure providing for various municipalities, on the other.  *Compare, e.g.*, Appellants' Brief at 20 (discussing *Hillenmeyer* application of "principle" from *Shaffer v. Carter*, 252 U.S. 37, 49 (1920), involving State taxation of a non-resident).  I wouldn't buy such a one-to-one analogy for these purposes; I do not believe, for example, that it would be an appropriate reading of precedent to replace the word "State" wherever it appears in the relevant case law with "municipality" and then simply say that the same outcome must obtain with regard to non-residents.  But to my eye, that is essentially what appellants do when they fail to reckon with the State-enacted authorization here other than through generalized and unsupported statements to the effect that the State cannot authorize the sort of municipal taxation at issue.  *Compare, e.g.*, Appellants' Brief at 17 (case law "borrowing from the interstate context in no way limits the Due Process principles to interstate challenges—as *Angell*'s intrastate application [upholding a purely municipal ordinance, I note, and not challenging any state law] makes perfectly clear").

{¶ 55}  That approach using what I understand as an implicit federal/state analogy doesn't follow, at all, in part for the reason *Angell* explains: our national Constitution enumerates and limits federal powers and ensures a critical check by way of the vertical separation of powers, while Ohio's state system of government is rather differently designed.  *See also, e.g., Natl. Fedn. of Indep. Business v. Sebelius*, 567 U.S. 519, 533, 535 (2012) ("In our federal system, the National Government possesses only limited powers; the States and the people retain the remainder"; "[t]he same does not apply to the States, because the [federal] Constitution is not the source of their power"; absent restriction, "state governments do not need constitutional authorization to act").  Thus, the federal Constitution is structured in significant part to protect the balance that separate states with their own governmental authorities, processes, and determinations can provide, whereas Ohio's Constitution, even while providing for municipal home rule authority, does not

similarly limit the general powers of the State to a specified list (or prevent the State from working through its General Assembly to limit the power of municipalities to levy taxes, *see* Ohio Constitution, Article XVIII, Section 13).  By simply citing to what I view as largely inapposite case law, appellants do not convince me the federal due process clause limits in the way they suggest how Ohio's legislature chooses to define the State's relationship to and among its municipalities with regard to taxation of income from an employee's principal place of work.

{¶ 56} Because I do not find that appellants have advanced an argument that would warrant our nullifying the duly enacted Ohio law at issue, I concur in the judgment of the court.

> NELSON, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____