[Cite as *Schaad v. Alder*, 2022-Ohio-340.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


JOSH SCHAAD,                                  :          APPEAL NO. C-210349
                                                        TRIAL NO. A-2100517
    Plaintiff-Appellant,                :

  vs.                                         :

                                                                *O P I N I O N.*
KAREN ALDER, in her official capacity         :
as finance director of the city of
Cincinnati,                                   :

    Defendant-Appellee,                 :

  and                                         :

DAVE YOST, in his official capacity as        :
Ohio Attorney General,

    Defendant.                          :


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 7, 2022


*The Buckeye Institute*, *Jay R. Carson* and *Robert* Alt, for Plaintiff-Appellant,

*Ice Miller LLP*, *Diane Menashe* and *Daniel Anderson*, for Defendant-Appellee.

**WINKLER, Judge.**

{¶1}　In this income tax dispute, plaintiff-appellant Josh Schaad appeals the judgment of the trial court dismissing his complaint against defendant-appellee Karen Alder, in her capacity as the finance director for the city of Cincinnati.　For the reasons that follow, we affirm.

## Background

{¶2}　In March 2020, Ohio Governor Mike DeWine issued an executive order declaring a state of emergency in response to the COVID-19 virus ("Executive Order 2020-01D").　The following week, Ohio's director of health issued an order requiring "all individuals currently living within the State of Ohio * * * to stay at home or at their place of residence[,]" subject to certain exceptions for "essential businesses and operations" ("the stay-at-home order").　The General Assembly enacted emergency legislation in response to the stay-at-home order, including Section 29, 2020 H.B. 197 ("Section 29"), which addressed municipal taxation for those employees working from home.　Section 29 provides:

> Notwithstanding section 718.011 of the Revised Code, and for the purposes of Chapter 718. of the Revised Code, during the period of the emergency declared by Executive Order 2020-01D, issued on March 9, 2020, and for thirty days after the conclusion of that period, any day on which an employee performs personal services at a location, including the employee's home, to which the employee is required to report for employment duties because of the declaration shall be deemed to be a day performing personal services at the employee's principal place of work.

{¶3} Schaad is a resident of Blue Ash, Ohio, and works in the financial-services industry. Schaad has an office located in Cincinnati. Prior to the pandemic, Schaad worked part of the week in his Cincinnati office, and part of the week either traveling or working from home. Schaad's employer withheld Cincinnati municipal income tax from his pay. After the stay-at-home order went into effect, Schaad mostly worked from his home in Blue Ash. In June 2020, when the restrictions imposed by Schaad's employer became more stringent, he worked exclusively from home. Schaad returned to the Cincinnati office part time in December 2020. In January 2021, Schaad applied for a refund of his municipal-income tax from the city. The city refused to grant him a refund for the days he worked from home due to the stay-at-home order.

{¶4} Schaad filed a complaint against the city and state challenging the validity of Section 29. Schaad sought a declaratory judgment that Section 29 is unconstitutional under the Due Process Clause, because it permits a municipality to tax nonresidents for work performed outside of the city. Schaad also requested a declaratory judgment that Section 29 did not apply to him, because he had already been working from home or outside of the city limits prior to the emergency declaration. Schaad also sought to recover the imposition of the alleged illegal tax.

{¶5} The city filed a motion to dismiss Schaad's claims under Civ.R. 12(B)(6). The city argued that the Due Process Clause has no application to Section 29, because it is an Ohio law directed at Ohio residents working in Ohio. As to Schaad's claims that the city had wrongfully withheld his tax refund, the city argued that it had issued Schaad a partial refund based on the days that he would have been working from home regardless of the emergency declaration, and thus the city

3

argued that Schaad's claim for a refund was moot. The city also argued that Schaad had failed to exhaust his administrative remedies by filing the instant declaratory-judgment action without appealing the decision to the city's Board of Tax Review. By consent of the parties, the trial court dismissed the Ohio attorney general as a party.

{¶6} After a hearing on the city's motion to dismiss, the trial court granted the city's motion. The trial court determined that Section 29 was a constitutional act that did not violate Schaad's due-process rights. Schaad appeals, and his three assignments of error are as follows:

> ASSIGNMENT OF ERROR NO. 1: The trial court erred by failing to apply the well-established due process requirements governing nonresident municipal income tax first set forth by the Ohio Supreme Court in *Angell v. Toledo*, 153 Ohio St. 179, 91 N.E.2d 250 (1950) and most recently articulated in *Hillenmeyer v. Cleveland Bd. of Rev.*, 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164 and *Willacy v. Cleveland Bd. of Income Tax Rev.*, 159 Ohio St.3d 383, 2020-Ohio-314, 151 N.E.3d 561.

> ASSIGNMENT OF ERROR NO. 2: The trial court erred in finding that the City had in personam jurisdiction to tax Mr. Schaad, a nonresident, where Ohio Supreme Court precedent has held that in personam jurisdiction in the municipal tax context is limited to residents of the municipality.

> ASSIGNMENT OF ERROR NO. 3: The trial court erred in holding that the General Assembly can authorize exterritorial taxation.

All three of Schaad's assignments of error challenge the trial court's decision to uphold the constitutionality of Section 29 and grant the city's motion to dismiss.

**Standard of Review**

{¶7}   An appellate court reviews an order granting a Civ.R. 12(B)(6) motion to dismiss de novo. *Perrysburg Twp. v. City of Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. When construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Prior to dismissing a complaint under Civ.R. 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts entitling it to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. When considering a motion pursuant to Civ.R. 12(B)(6), the court cannot rely on evidence or allegations outside of the complaint. *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207, 680 N.E.2d 985 (1997).

{¶8}   Duly-enacted statutes have a strong presumption of constitutionality. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 25. "Before a court may declare unconstitutional an enactment of the legislative branch, 'it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *Id.*, quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus.

**Constitutionality of Section 29**

{¶9}    Article XVIII, Section 3 of the Ohio Constitution, known as the Home Rule Amendment, provides that "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws[.]"   The Ohio Constitution authorizes the General Assembly to pass laws "to limit the power of municipalities to levy taxes and incur debts for local purposes." Ohio Constitution, Article XVIII, Section 13.

{¶10} Schaad argues that Section 29 impermissibly expands municipal taxation.  As an initial matter, we note that the Ohio Supreme Court has recognized the authority of the General Assembly to create a uniform municipal-taxation scheme and to require municipal corporations to strictly adhere to state law.  *City of Athens v. McClain*, 163 Ohio St.3d 61, 2020-Ohio-5146, 163 N.E.3d 411, ¶ 51.  In this case, the city had no choice but to follow the dictates of the General Assembly in Section 29.  By its terms, Section 29 requires that Schaad be deemed to have been working from his principal place of business, Cincinnati, even though he was not physically present there.  Therefore, the city followed state law in imposing tax liability on Schaad.

{¶11}  Moreover, as this court has recognized, a municipal corporation may tax beyond its physical borders where permitted by statute.  *Time Warner Cable, Inc. v. City of Cincinnati*, 2020-Ohio-4207, 157 N.E.3d 941 (1st Dist.).  In *Time Warner Cable*, a cable company and its subsidiaries filed a consolidated municipal income tax return with the city that mirrored the federal tax return.  The city refused to

accept the consolidated filing, arguing that only the affiliated corporate entities actually doing business in Cincinnati could be part of the consolidated filing under the city's municipal code. The cable company argued that state law permitted the consolidated filing, and that state law preempted the Cincinnati municipal code under the Home Rule Amendment. Ohio's Board of Tax Appeals sided with the cable company, and the city appealed. In arguing against preemption, the city argued that if the city were to follow state law and accept the cable company's consolidated tax return, the city would be acting extraterritorially. The court found the city's argument regarding extraterritorial taxation "dubious," but nevertheless noted that a city can act extraterritorially where permitted by state law. *Time Warner* at ¶ 17, citing *Prudential Co-op. Realty Co. v. City of Youngstown*, 118 Ohio St. 204, 211-212, 160 N.E. 695 (1928) (a city has the power to act outside city limits where given by statute).

{¶12} Turning to Schaad's due-process concerns, "[a] state's taxing jurisdiction may be exercised over all of a resident's income based upon the state's in personam jurisdiction over that person." *Corrigan v. Testa*, 149 Ohio St.3d 18, 2016-Ohio-2805, 73 N.E.3d 381, ¶ 31, citing *Hillenmeyer*, 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164, at ¶ 41, and *Shaffer v. Carter*, 252 U.S. 37, 52, 40 S.Ct. 221, 64 L.Ed. 445 (1920). Because Section 29 was a dictate of the Ohio General Assembly, and Schaad is a citizen of Ohio, Schaad has received all the process that he was due under the law.

{¶13} Schaad nevertheless argues that in personam jurisdiction for taxation purposes does not apply here where he is a nonresident of the city. Schaad first relies on the Ohio Supreme Court decision in *Angell*, 153 Ohio St. 179, 91 N.E.2d 250.

7

In *Angell*, the court held that a municipality, consistent with the Home Rule Amendment, has the power to assess and collect income tax on nonresidents who work and receive their pay in the municipality. The court noted that "the test of whether a tax law violates the due process clause is whether it bears some fiscal relation to the protections, opportunities, and benefits given by the state, or, in other words, whether the state has given anything for which it can ask a return." *Id.* at 185, citing *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 85 L.Ed. 267, 61 S.Ct. 246 (1940).

{¶14} Schaad then points to the Ohio Supreme Court's decision in *Hillenmeyer*, 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164. In *Hillenmeyer*, a professional football player sued the city of Cleveland after Cleveland refused to issue him a tax refund. Cleveland had adopted a municipal tax on professional athletes based upon the number of games the athlete played in Cleveland in relation to the total number of games played in the year, known as the "games-played" method. The player, who was not a resident of Cleveland, asserted that Cleveland's games-played method of calculating income taxes violated his due-process rights, because it assumed that the player only worked during games and failed to take into account that the player was required to provide services to his employer outside of games, such as preseason and postseason camps, meetings, and practice sessions. Thus, the player argued, the games-method reached income the player earned while outside Cleveland and was "extraterritorial." The *Hillenmeyer* court agreed with the player that "[d]ue process requires an allocation that reasonably associates the amount of compensation taxed with work the taxpayer performed within the city[,]" and that "[t]he games-played method reaches income for work that was performed

8

outside of Cleveland, and thus Cleveland's income tax violates due process as applied to NFL players such as Hillenmeyer." *Id.* at ¶ 46.

{¶15} Finally, Schaad relies on *Willacy*, 159 Ohio St.3d 383, 2020-Ohio-314, 151 N.E.3d 561. In *Willacy*, a former employee of Sherwin-Williams in Cleveland retired and moved to Florida. Five years later, she exercised her stock options, and Cleveland collected income tax on their value. The employee argued that Cleveland's tax violated her due-process rights because the employee's income-producing activities that entitled her to the stock options had occurred years prior.

{¶16} In upholding the tax against the employee's constitutional challenge, the *Willacy* court reasoned that a two-part test exists for determining whether a taxing authority exceeded its jurisdiction. First, a " 'definite link' " or " 'minimum connection' " between the taxing authority " 'and the person, property or transaction it seeks to tax' " must be established. *Id.*, quoting *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-345, 74 S.Ct. 535, 98 L.Ed. 744 (1954). The focus in the first part of the test is on the "presence of either in personam jurisdiction over the taxpayer or in rem jurisdiction over her income or property." *Willacy* at ¶ 22. Second, due process "demands the presence of a rational relationship between the income taxed by the jurisdiction and the income-producing activity or property within that jurisdiction." *Willacy* at ¶ 22, citing *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 273, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978). The second part of the inquiry focuses "on how much of a nonresident's income the local taxing authority may fairly reach." *Willacy* at ¶ 22.

{¶17} According to Schaad, *Angell*, *Hillenmeyer*, and *Willacy* stand for the proposition that a municipal corporation is prohibited by the Due Process Clause from taxing a nonresident's income extraterritorially, meaning the nonresident's

9

work was performed outside of the municipal corporation. We disagree. *Hillenmeyer* and *Willacy* deal with interstate taxation and not intrastate taxation. We are not alone in rejecting Schaad's due-process concerns. The Tenth Appellate District recently considered whether Section 29 violated due process in *Buckeye Inst. v. Kilgore*, 10th Dist. Franklin No. 21AP-193, 2021-Ohio-4196. In *Kilgore*, the court analyzed *Willacy*, *Hillenmeyer*, and *Angell* and determined that none of those cases apply to Section 29—an emergency measure designed to preserve the status quo of the tax code during a public-health crisis.

{¶18} The *Kilgore* court further reasoned that laws passed by the General Assembly are presumed valid, and that " 'federal due process is satisfied if there is a rational relationship between a statute and its purpose.' " *Kilgore* at ¶ 37, quoting *Desenco, Inc. v. City of Akron*, 84 Ohio St.3d 535, 545, 706 N.E.2d 323 (1999), citing *Martinez v. California*, 444 U.S. 277, 283, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). Given the public-health emergency, the *Kilgore* court concluded that the General Assembly acted constitutionality in enacting Section 29. We agree with the analysis provided by the *Kilgore* court.

{¶19} We determine that Section 29 does not violate the Due Process Clause. As a result, we overrule Schaad's three assignments of error.

### Conclusion

{¶20} The trial court did not err in granting the city's motion to dismiss Schaad's complaint. We affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON, P.J.,** and **CROUSE, J.,** concur.

10

Please note:

    The court has recorded its own entry on the date of the release of this opinion.